THE ATTORNEY GENERAL vs. THE SUPERIOR & ST. CROIX RAILROAD COMPANY.

*May 27 — June 19, 1896.*

*Corporations: Dissolution: Forfeiture of franchises: Nonuser: Surrender: Acceptance: Waiver of forfeiture: Quo warranto: Claim to exercise franchises.*

1. Under sec. 1763, R. S.,— providing that "whenever any corporation . . . shall have suspended its ordinary and lawful business for one whole year, it shall be deemed to have surrendered the rights, privileges, and franchises granted or acquired under any law, and shall be adjudged to be dissolved,"— such suspension of its business does not *ipso facto* dissolve the corporation, but furnishes ground for its dissolution by the judgment of a competent court.

2. Where the consideration for the grant of corporate privileges, rights, and franchises is the performance of certain functions and the rendition of services of a public character, as in the case of a railroad corporation, the consent of the state in some form is essential to its dissolution; and an acceptance by the state of the surrender of such privileges, rights, and franchises is necessary in order to terminate the corporate existence by surrender.

**Wis.]** JANUARY TERM, 1896. 605

The Attorney General vs. The Superior & St. Croix R. Co.

3. Unless its charter so provides, a corporation is not dissolved by mere nonuser of its franchises, though such nonuser may be sufficient ground for forfeiture by judicial proceedings.

4. By the enactment of a statute amending the charter of a railroad company, explicitly recognizing its continued existence as a corporation, and expressly affirming its right to exercise the power of eminent domain in the manner prescribed by the general law in addition to the method pointed out by its original charter, the state waived the right to enforce a forfeiture of the corporate franchises theretofore incurred by nonuser.

5. An information in the nature of *quo warranto* cannot be maintained against a corporation merely because it claims or intends to exercise certain franchises, which it has not in fact exercised; and in such a case the validity of the statute conferring those franchises upon it is not properly presented for determination.

APPLICATION for leave to file an information in the nature of *quo warranto*. *Denied.*

This was an application by the *Attorney General*, upon an order requiring the defendant company to show cause why an order should not be made granting leave to him to file an information in the nature of *quo warranto* against said company, and for process against it, etc. The proposed information sets out, in substance, the incorporation of the company by ch. 326, P. & L. Laws of 1870, as amended by ch. 2 and ch. 328, P. & L. Laws of 1871; that it accepted its charter in February, 1871, and in that year located that portion of the line of its road authorized by its charter extending from Superior, Wisconsin, to the Minnesota state line, acquired some right of way, and entered into a contract for the construction of said road with contractors, who commenced the work of construction, and prior to May, 1872, did certain work specified, when the construction of said road was stopped and abandoned, and not afterwards prosecuted, and no part of its road had been completed or operated; that August 31, 1880, the company held a meeting, at which a full board of directors was elected, who chose a president and other officers; that no other meeting

of stockholders was held until October 16, 1895, when a full board of directors was elected, who chose a president and other officers of the company; that it had suspended its lawful and ordinary business for one whole year and over, to wit, for fifteen years, and had thereby surrendered the rights, privileges, and franchises granted to it by the said charter and the acts amendatory thereof, and that it ought to be, and should by right be, dissolved; that, notwithstanding the abandonment and surrender of said franchises, the said company had, through its stockholders, elected a board of directors as aforesaid, and they a president and other officers, and had usurped, and did still usurp, the rights, privileges, and franchises aforesaid, and gave out and threatened that, in the exercise thereof, it would operate railroads within the state, and issue stocks and bonds thereon, and carry on the business of a railroad corporation as fully to all intents and purposes as if the said abandonment and surrender had not occurred, and as if no ground for judicial forfeiture existed, to the great damage and prejudice of the people, etc.

The said company filed an affidavit of Hiram Hayes, its secretary, by way of showing cause, to the effect that he was one of the corporators named in the original charter; that on the 4th of February, 1871, at a meeting of the corporators, by resolution, a stock subscription book was opened, and a committee appointed to receive subscriptions, and stock was subscribed by ten different persons, he (the said Hayes) being one of the subscribers; that ten per cent. of the stock was called and paid, and directors and officers were elected; that numerous meetings were afterwards held, a full set of by-laws and a corporate seal adopted, and various other business transacted; that the company, in the year 1871, located that portion of the line of its road authorized by its charter extending from Superior to the state line of Minnesota, and acquired by deeds of conveyance a right of

way for the same; that in 1871 the company entered into a contract for the construction of its road; that the contractors did considerable grading thereon, and provided ties and other timber for use in construction, but they stopped work thereon in May, 1872; that on the 31st of August, 1880, there was an annual meeting of the stockholders, when nine directors were elected to hold until their successors were elected and qualified, and they elected a president, vice president, secretary, and treasurer, but no other election of directors was held until October 16, 1895, when, additional stock having been subscribed and paid in, a full board of directors was duly elected; that deponent, from the organization of the company until the election of said board of directors and officers, in 1895, was continuously the secretary of the company, having in his custody the books, records, and corporate seal, and its office, from its organization, had been in the office of the said secretary in the city of Superior; that the company, while it transacted no business in the way of constructing and operating a railroad between 1880 and October 16, 1895, was not insolvent, and owed no indebtedness whatever, and there was due it upon its original stock subscriptions ninety per cent., which had since been called and paid in; that it was not the intention of the defendant company to surrender its franchises or forfeit the same prior to the 16th of October, 1895; that upon the new stock subscribed in October, 1895, the par or face value was called by the board of directors and paid in to the treasurer of the company; and it was insisted that the legislature, at its session in 1895, had waived the ground of forfeiture alleged, and all grounds of forfeiture then existing against the company, by the enactment of ch. 244, Laws of 1895, amending said charter and said several acts amendatory thereof. In an unverified statement, by way of showing cause, signed by the attorneys of the company, it was insisted, among other things, that the company had accepted

the amendments to its charter by the act of 1895, and that it was exercising, and intended to exercise, the privileges, rights, and franchises conferred upon it by its charter and the amendatory act of 1895, and to acquire, by purchase, construction, and otherwise, the railroads and general routes designated in the act of 1895, and to operate the same within and without the state, and to issue its stock and bonds thereon, as authorized by said act.

By the original charter, the company was authorized to survey, locate, and from time to time alter, change, and relocate so as not to materially change the route, and to construct, maintain, and operate a railroad, with one or more tracks or lines, from some convenient point on the west shore of the Bay of Superior, or on the south shore of the Bay of St. Louis, in the county of Douglas, running thence southerly, through the counties of Douglas, Burnett, Polk, St. Croix, and Pierce, via St. Croix Falls and Hudson, to Prescott, with a branch or extension running westerly from the above-designated place of beginning to such point on the Minnesota boundary, north of the Nemadji river, as might be deemed desirable by the directors of said railroad company. The company was authorized to have a capital stock of $5,000,000, and to connect its railroad with other railroads, and operate the same in such manner as should be agreed on; and any company having a railroad built or partly built, running in the direction of the line of railroad so authorized to be built and operated, was authorized to make sale or lease thereof, with its franchises, etc., to the said *Superior & St. Croix Railroad.*

By the act of 1895, the company is authorized to extend its road westward from the Minnesota state line, upon such route or routes as its board shall adopt, " to such point or points on the Pacific coast as such board shall select; and from said point or points in Douglas county easterly upon such route or routes as said board shall adopt, to or near

Ashland, in the county of Ashland, in the state of Wisconsin, and thence by such route or routes and to such point or points in the state of Michigan as said board shall select; also from such point or points in Douglas county, upon such route or routes as said board shall adopt, through the counties of Douglas, Burnett, Polk, St. Croix and Pierce, or any of them, to Prescott on the Mississippi river, with a branch from some point in one of said counties, to be selected by the board of directors, to St. Paul and Minneapolis, Minnesota, or to either of said places; also from said point or points in said Douglas county, or from some point to be selected by such board on any railroad or railroads which the said company is or hereafter may be authorized to construct or otherwise acquire, upon such route or routes as such board shall adopt, through the states of Wisconsin and Illinois, to or into the city of Chicago in the county of Cook in said last named state. And the said company is further authorized and empowered to survey, locate, construct, and to acquire, by purchase or otherwise, and to equip, maintain and operate, and perpetually have, use, possess and enjoy branch lines of railroad from its main line or lines in and into or through any state or territory of the United States, or extending into or lying within the dominion of Canada, or any portion or province thereof." Laws of 1895, ch. 244, sec. 1. And it was authorized to exercise the power of eminent domain for the acquisition of lands, right of way, etc., to the extent and in the manner provided by R. S., secs. 1845–1856. To accomplish these purposes, it is authorized to borrow money, issue notes, bonds, or debentures, and execute mortgages or deeds of trust on any or all of its property and franchises; and it is authorized to acquire and hold and guaranty stocks and bonds of other corporations.

The *Attorney General*, for the application, contended that the corporation had become dissolved and dead prior to the enactment of ch. 244, Laws of 1895, citing *Combes v. Keyes*,

89 Wis. 297; *Goulding v. Clark*, 34 N. H. 148, and cases cited; *Bartholomew v. Bentley*, 1 Ohio St. 37; *People ex rel. Att'y Gen. v. Bank of Pontiac*, 12 Mich. 527, 538; *Penfield v. Skinner*, 11 Vt. 296.

*John C. Spooner*, of counsel, for the respondent.

PINNEY, J.  1. It is settled in this state, as well as in others in which a similar statute exists, that the suspension by a corporation of its ordinary and lawful business for one whole year, as the language of the statute itself imports (R. S. sec. 1763), does not *ipso facto* dissolve the corporation, but furnishes a cause for its dissolution by the judgment of a competent court.  *Sleeper v. Goodwin*, 67 Wis. 577, 585; *Strong v. McCagg*, 55 Wis. 624; *Combes v. Keyes*, 89 Wis. 309; *People v. Hillsdale & C. Turnpike Road*, 23 Wend. 254, 257; *People v. Bank of Pontiac*, 12 Mich. 527, 537.

2. As the authority of the state is essential to the creation of a corporation, and its charter is considered a contract between the corporation and the state, in all cases where the consideration for the grant of corporate privileges, rights, and franchises is the performance of certain functions and the rendition of services of a public character, as in the case of a railroad corporation or the like, the consent of the state in some form is essential to its dissolution, and an acceptance by the state of the surrender of its privileges, rights, and franchises is necessary in order to terminate the corporate existence by surrender; and very many cases hold that it is essential in all cases of dissolution by surrender by private companies.  Beach, Priv. Corp. § 781; *Combes v. Keyes*, 89 Wis. 311.  In *Bradt v. Benedict*, 17 N. Y. 99, it is said that, " as a general rule, to constitute a dissolution of a corporation by surrender of its franchises, or by misuser or nonuser, the surrender must be accepted by the government, or the default must be judicially ascertained and declared," and " a mere omission to exercise a corporate franchise is

not a forfeiture *per se* of the franchise, or a dissolution of the corporation." 2 Kent, Comm. *311; *Penniman v. Briggs,* Hopk. Ch. 300. The corporation in this case was not insolvent. It had property, and was not indebted, and it had the usual board of directors and officers. It is shown, in fact, that there was no intention to surrender its franchises. In *Boston Glass Manufactory v. Langdon,* 24 Pick. 49, 52, it was held that, "although a corporation may forfeit its charter by an abuse or misuser of its powers and franchises, yet this can only take effect upon a judgment by a competent tribunal;" and that "the surrender of a charter can only be made by some formal, solemn act of the corporation, and will be of no avail until accepted by the government. There must be the same agreement of the parties to dissolve that there was to form the compact. It is the acceptance which gives efficacy to the surrender." And of the omission to choose directors it was said: "It clearly does not show a dissolution of the corporation. Although the proper officers may be necessary to enable the body to act, yet they are not essential to its vitality. Even the want of officers and the want of power to elect them would not be fatal to its existence. It has a potentiality which might, by proper authority, be called into action without affecting the identity of the corporate body. *Colchester v. Seaber,* 3 Burrow, 1870. But here, in fact, was no lack of officers. Although no directors had been chosen for several years, yet, by the by-laws of the corporation, the directors, though chosen for one year, were to continue in office until others were chosen in their stead." A similar provision is found in the charter of this corporation. The authorities are abundant to establish these views. *Enfield Toll Bridge Co. v. Connecticut River Co.* 7 Conn. 28, 45; *Brandon Iron Co. v. Gleason,* 24 Vt. 238; *Penobscot Boom Corp. v. Lamson,* 16 Me. 224, 230; *Higgins v. Downward,* 40 Am. St. Rep. 141.

3. A corporation is not dissolved by mere nonuser of its franchises. Beach, Priv. Corp. §§ 54, 58, 784; High, Extr. Leg. Rem. § 647; *Bank of Bethel v. Pahquioque Bank*, 14 Wall. 383, 398, 399; *National Bank v. Insurance Co.* 104 U. S. 54; *Swan L. & C. Co. v. Frank*, 39 Fed. Rep. 456. Nonuser may furnish sufficient ground for forfeiture by judicial proceedings to declare and enforce it. *Chesapeake & O. Canal Co. v. B. & O. R. Co.* 4 Gill & J. 121, 122; *Heard v. Talbot*, 7 Gray, 119; *People v. Bank of Pontiac*, 12 Mich. 537; *State ex rel. Hahn v. Minn. Cent. R. Co.* 36 Minn. 258. It is held in some cases that a total nonuser of the powers, privileges, and franchises of a corporation may exist for such a time and under such circumstances as to create a presumption of surrender and acceptance, but no specified time has been indicated as sufficient for that purpose in any case to which we have been referred. *Penfield v. Skinner*, 11 Vt. 296; *Brandon Iron Co. v. Gleason*, 24 Vt. 228. The subject of nonuser, surrender, and abandonment of corporate rights and franchises was quite fully considered in the recent case of *Combes v. Keyes*, 89 Wis. 311, where the question came up collaterally; and it was there held that in that case there had been a surrender and acceptance by the state, it appearing that the corporation "had been stripped of all its property, and for twenty-six years had failed to exercise any corporate franchise or elect any officer in this state, or keep any office therein," and it had, by express legislative authority, mortgaged its franchises, and, upon foreclosure, they had been sold, and the purchaser under the sale organized under legislative authority, which amounted to a confirmation of the transfers of its franchises and an acceptance of previous surrender. The case is clearly distinguishable from the one before us, in which all the grounds alleged in the proposed information only furnish cause for judicial interposition, and no one of them amounts *per se* to a termination or dissolution of corporate existence; nor does

the charter of this corporation contain any provision by which, for any cause, the corporation shall cease to exist and stand *ipso facto* dissolved.

4. The state might waive the grounds of forfeiture alleged. Beach, Priv. Corp. § 59, and cases cited. And we are of the opinion that it did waive them by the enactment of ch. 244, Laws of 1895, amending its charter, and recognizing, in the most explicit manner, the continued existence of the corporation, and, among other things, expressly confirming its right to exercise the power of eminent domain in the manner prescribed by the general railroad law (R. S. secs. 1845–1856) in addition to the method pointed out by its original charter.

For these reasons, we hold that the corporation is still a lawfully existing one, and that the state has condoned all the alleged acts of nonuser or abandonment, and that there is no ground for permitting the information to be filed to bring in question the corporate existence of the company, or its right to the privileges, rights, and franchises originally conferred upon it.

5. Whether the provisions of ch. 244, Laws of 1895, which greatly enlarge the existing rights, privileges, and franchises of the company, and confer upon it others of a varied and most comprehensive and highly important character, are void, as being in violation of the seventh clause of the constitutional amendment of 1871 (art. IV, sec. 31), forbidding the enactment of " any special or private laws  .  .  . (7) for granting corporate powers or privileges, except to cities," is not presented by the information so as to become a proper subject for judicial determination, and we neither express nor intimate any opinion in respect to these portions of the act. The constitution which gives to this court jurisdiction of the writ of *quo warranto* gives the court jurisdiction of all cases in which the information in the nature of *quo warranto* had been used in modern times as a substitute

for the ancient writ of *quo warranto* at common law. *State v. West Wis. R. Co.* 34 Wis. 197. And an information in the nature of *quo warranto* is now regarded, not only as the appropriate means of testing the right to exercise corporate franchises, but also as the proper remedy for the abuse thereof; the ancient civil writ having long since become obsolete in England, and being wholly superseded in that country and in most of the American states by a criminal information in the nature of *quo warranto*. Beach, Priv. Corp. § 53; *State ex rel. Att'y Gen. v. M., L. S. & W. R. Co.* 45 Wis. 579. The statute (R. S. sec. 3466) provides that such proceeding may be brought " when any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any *franchise* within this state," etc., or " when any association or number of persons shall act within this state as a corporation without being duly incorporated;" but the use by this court of writs and proceedings in the forms used before the statute still remains. Sec. 3463. By sec. 3241 it is provided that " an action may be brought by the attorney general, or by any private party, in the name of the state, on leave granted therefor by the supreme court upon cause shown, for the purpose of vacating the charter or annulling the existence of any corporation created by or under the laws of this state, except a municipal corporation," in the cases therein specified, but all referring to offenses, violations, or acts of forfeiture already actually committed. This court has no jurisdiction of a *mere claim* to exercise corporate rights, privileges, or franchises. To usurp, intrude into, or unlawfully hold or exercise an office or franchise, which last term may include corporate powers, means to take possession of the office or franchise without right or unlawfully, or unlawfully hold or use the same after possession has been rightfully or wrongfully acquired. *People ex rel. Taylor v. Thompson,* 16 Wend. 657. Our statute (sec. 3466) is a literal copy of the New York statute under

which that case was decided; and it was there said by NELSON, J., that "the words of the statute were taken from 9 Anne, c. 20, § 4, under which it has been repeatedly determined that there must be a *user* or *possession* of the office or franchise to authorize the information, and that a *mere claim* is insufficient. *Rex v. Ponsonby*, 1 Ves. Jr. 1; *Rex v. Whitwell*, 5 Term, 86; Buller, N. P. 211; *Rex v. Tate*, 4 East, 337; 4 Bac. Abr. 417; Willcock, Corp. 462; Ang. & A. Corp. 744." The case of *Rex v. Ponsonby*, *supra*, is clear and decisive on this point, and it is there said that "there must be usurpation, intrusion, or unlawful holding. Now, claiming can by no construction be taken to amount to any of these; and it would be strange to imagine the statute intended ever to prevent the asserting or claiming a right. The practice now generally is to have an affidavit of some act of usurpation upon application for leave to file," etc. And this position is sustained by *Reg. v. Pepper*, 7 Adol. & E. 745; *Updegraff v. Crans*, 47 Pa. St. 103, and *People ex rel. Farrington v. Whitcomb*, 55 Ill. 176. As to the increased or added rights, powers, and franchises under ch. 244, Laws of 1895, the information does not allege that the defendant has used or exercised any of them. There is nothing to show that the company has done any act that it might not lawfully have done under its original charter. The information is the foundation of the jurisdiction of the court, and it cannot be aided by the very general and uncertain statement filed by the defendant that it "is exercising, and intends to exercise, the privileges, rights, and franchises conferred upon it . . . by the amendatory act of 1895, and to acquire, by purchase, construction, and otherwise, the railroads and general routes designated in that act, and to operate the same within and without the state, and to issue its stock and bonds thereon, as authorized by said act." An information in the nature of *quo warranto* cannot be maintained against a corporation for what it may intend or threaten to do.

This information does not present any actual practical question in these respects for the judgment of the court, and no judgment of exclusion could possibly be framed upon such allegations. For these reasons, the court cannot consider them, or enter upon the question of the validity of the provisions of the act of 1895, referred to.

*By the Court.*— The motion for leave to file an information and for process is denied.