THE STATE EX REL. THE VILTER MANUFACTURING COMPANY and others, Respondents, vs. THE MILWAUKEE, BURLINGTON & LAKE GENEVA RAILROAD COMPANY, Appellant.

*December 3—December 16, 1902.*

*Street railways: Commercial railroads: Franchise to occupy city streets: Ordinances: Construction: Quo warranto: "Person," in statute: "Franchise," in statute: "Holding and exercising a franchise," in statute.*

1. A city ordinance granted to a commercial railroad, organized under sec. 1820, Stats. 1898, "its successors and assigns," the right to construct an elevated railroad over certain streets, many of which contained surface street railways. The ordinance was denominated a franchise; contemplated the erection of passenger stations, etc.; limited the rate of fare within

the city; required the carriage of policemen, firemen and
health officers free, and required the company to build and main-
tain certain bridges for the accommodation of teams and foot
passengers as well as its trains. *Held*, that the ordinance at-
tempted to, and did, grant a franchise to operate an elevated
street railway, under sec. 1862, Stats. 1898 (providing for the
formation and powers of street railways, and regulating grant-
ing franchises therefor), and that it was not a mere code of
police regulations, regulating the use of the right conferred on
commercial railroads by sec. 1828, Stats. 1898, to build and
maintain their road across or along any street.
2. An ordinary commercial railroad organized under sec. 1820, Stats.
1898 (providing for the organization of corporations for con-
structing, maintaining and operating railroads for public use
in the conveyance of persons or property), is not endowed with
the power to accept street railway franchises under said sec.
1862, Stats. 1898.
3. A private corporation is a "person" within the meaning of sec.
3466, Stats. 1898, providing that an action may be brought by
the attorney general in the name of the state "when any person
shall usurp, intrude into or unlawfully hold or exercise any
public office, civil or military, or any franchise within the state."
4. A street railway franchise to operate a system of street railways
in a city, using the streets and alleys for that purpose, is a "fran-
chise" within the meaning of said sec. 3466. The state may by
*quo warranto* inquire into the title by which it is held, and, if
the party assuming to exercise it has no title thereto, judgment
of ouster will be rendered.
5. Under said sec. 3466, Stats. 1898, a commercial railroad, by a
formal acceptance under seal, as the ordinance required, ac-
cepted a franchise to construct and maintain a street railway
over certain streets in the city of Milwaukee. *Held*, that it was
holding and exercising the franchise, attempted to be granted,
within the meaning of sec. 3466, Stats. 1898, as fully as if it had
started to build its structure.

APPEAL from an order of the circuit court for Milwaukee
county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This is an action of *quo warranto*, brought in the name of
the state by four owners of real property in Milwaukee for
the purpose of testing the right of the defendant to hold and
exercise a certain alleged franchise granted to it by the com-
mon council of the city of Milwaukee. The complaint

charged: (1) That the defendant is a railroad corporation organized under sec. 1820, Stats. 1898; (2) that the relators severally own certain pieces of real estate in said city abutting on the streets named in the franchise attacked, and that the construction of an elevated railroad along said streets would greatly damage the said property; (3) that, upon the defendant's application, on the 26th day of August, 1900, the common council of Milwaukee passed a certain ordinance purporting to grant the right to build an elevated railroad upon certain streets in the city of Milwaukee (a copy of such ordinance being attached), and that the mayor vetoed such ordinance, and that the same was afterwards passed over the veto by said common council September 9, 1901; (4) that the defendant thereafter filed with the city clerk its acceptance of said ordinance, in writing and under seal, and that it holds said franchise so attempted to be granted, and exercises the same by proceeding to act thereunder, and by said written acceptance, and by maintaining its alleged rights to said streets, although no work has been done or money expended; (5) that the defendant has no power or authority under the law to construct the railroad named in said franchise, or to accept or hold such franchise, and that the city has no power to grant the same to the defendant; (6) that an application to bring an action of *quo warranto* against the defendant has been made to the attorney general, and that he has refused to bring such action, and that the relators have given bond to the state for costs in this action, which has been approved by the attorney general. The prayer is that the defendant show cause by what authority it holds and exercises the said franchise, and, in default of showing cause, that it be adjudged guilty of unlawfully holding and exercising the same, and that it be excluded therefrom.

The ordinance aforesaid, a copy of which is attached to the complaint, is entitled "An ordinance granting a right of way to the *Milwaukee, Burlington and Lake Geneva Railroad*

*Company,"* and it provides, in substance, as follows:   (1)
That there is given and granted to the *Milwaukee, Burlington
& Lake Geneva Railroad Company,* its successors or assigns,
the right, permission, and authority to construct, maintain,
and operate an elevated railroad with two or more tracks, not
exceeding four, as said company, its successors or assigns,
may from time to time deem necessary, and such curves,
spurs, sidetracks, switches, sidings, turnouts, connections,
girders and supports, stations, platforms, and stairways, and
such telegraphs, telephones, signals, and other devices as the
company, its successors or assigns, may deem necessary upon
the routes thereinafter named; the route authorized being
a route commencing on Milwaukee street, at the south line of
Michigan street, and from thence running south along and
over the streets specifically named to the southern limits of
the city.   (2) That the authority and privileges granted are
upon condition that the railroad shall be an elevated struc-
ture, with girders and uprights of iron or steel, built in the
most approved manner, and of the best material, and under
certain restrictions specifically set forth in the ordinance.
(3) That the company, its successors or assigns, shall have
authority to construct at such points as it elects, most con-
venient to the people, all necessary or proper stations, stairs,
and depots, and connect the same with streets, avenues, and
alleys by means of stairs, stairways, elevators, and landing
places; full provisions being made requiring the proper con-
struction, heating, and lighting of such depots and stairways.
(4) That before any part of the structure or any station shall
be commenced the plan thereof shall be submitted to the board
of public works, and approved by them.   (5) That the city
shall at all times have the right to change the grade of any
street, and that the company shall thereupon change its struc-
ture to conform therewith in case the grade be changed more
than twelve inches.   (6) That the company be permitted to

cross the Milwaukee river and the Kinnickinnic river in certain places provided, and the company agrees to construct new bridges at such places after approved patterns, which shall also accommodate teams and foot passengers. (7) That the motive power of the road shall be electricity or some other improved mechanical power adapted to rapid transit, other than steam. (8) That the city shall have the right to use the structure for placing thereunder police, fire alarm, and telephone wires. (9) That in consideration of the privileges granted the company, its successors or assigns, shall carry upon all of its cars operated within the city limits all members of the police, fire, and health departments, when in uniform, without charge. (10) That the rate of fare between two points within the city shall not exceed five cents for one person over five years of age, and that children under that age shall be carried free when in charge of persons paying fare. (11) That the privileges granted are upon the express condition that the railroad shall be completed within three years from the acceptance of the ordinance, and upon the further condition (12) that the company, its successors or assigns, shall protect the city against all suits and damages of every kind resulting from the passage of the ordinance or the construction of the road. (13) That the company shall give a good and sufficient bond in the sum of $100,000, conditioned to perform all of the provisions of the ordinance, and to indemnify the city as aforesaid. (14) That if the company, its successors or assigns, shall not file with the city clerk a formal acceptance of the ordinance within ninety days after the passage and publication thereof, the rights and privileges granted shall be null and void.

The answer of the defendant admitted its corporate character as alleged; also that the relators owned property abutting upon the route of said railroad as alleged; but denied that such property is or will be damaged by the construction of the railroad, and that, if any damage does result, the

relators have an adequate remedy in law. The answer further admits that the defendant prayed for the passage of the ordinance; that the same was passed; that the defendant accepted the same, and holds it; and that it is the defendant's *bona fide* intention to build a road to the city of Lake Geneva. The answer further alleges that after said ordinance was passed the defendant expended large sums of money in surveying its line in the city of Milwaukee and through the country of the state, and in making plans for bridges, amounting in all to $50,000; that outside of the city of Milwaukee said road is to be a surface railroad, but that, in order to reach its terminus in the city, it will be necessary to come into the city by an elevated road on account of the many street railroads and other railroad tracks upon the surface. To this answer the relators demurred generally. The demurrer was sustained, and the defendant appeals.

For the appellant there were briefs by *O'Connor, Schmitz & Wild,* attorneys, and *Burr W. Jones,* of counsel, and oral argument by *Mr. J. L. O'Connor* and *Mr. Jones.* They contended, *inter alia,* that a railroad company organized under sec. 1820, Stats. 1898, has authority to accept an ordinance authorizing such railroad company to build its structure, and operate its cars thereon in the city of Milwaukee, as contemplated. *Halsey v. Rapid Transit St. R. R. Co.* 47 N. J. Eq. 380, 20 Atl. Rep. 859, 862; *State v. Hancock,* 35 N. J. Law, 537, 545; 4 Thompson, Corp. § 5641; *Ellerman v. Chicago J. R. & U. S. Y. Co.* 49 N. J. Eq. 217, 23 Atl. Rep. 287, 295, 296; *Clark v. Farrington,* 11 Wis. 321; *Madison, W. & M. P. R. Co. v. W. & P. P. R. Co.* 5 Wis. 173; *Winterfield v. Cream City B. Co.* 96 Wis. 239, 243; *Bishop v. North,* 11 Mees. & W. 418; 1 Elliott, Railroads, § 7; *Lieberman v. Chicago & S. S. R. T. R. Co.* 141 Ill. 140, 30 N. E. Rep. 544, 547; *Fulton v. Short Route R. T. Co.* 85 Ky. 640–647. The ordinance is not a franchise, but a license, which the city of Milwaukee had power to grant. Sec. 1820, Stats. 1898;

*Jamestown v. C., B. & N. Ry. Co.* 69 Wis. 648; *Evans v. C., St. P., M. & O. Ry. Co.* 86 Wis. 597, 604; *Oshkosh v. M. & L. W. R. Co.* 74 Wis. 534, 536; *State ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23; sec. 3, subch. IV, ch. 184, Laws of 1874; *Bell v. Platteville,* 71 Wis. 139; 1 Dill. Mun. Corp. 89, 575; *Detroit C. St. R. Co. v. Detroit,* 64 Fed. Rep. 628, 636; *Atchison St. R. Co. v. M. P. R. Co.* 31 Kan. 661. The ordinance was a proper exercise of the police power. *State ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23, 36; *Thorpe v. R. & B. R. Co.* 27 Vt. 140.   *Quo warranto* is not the proper remedy.   *People ex rel. Maybury v. Mutual G. L. Co.* 38 Mich. 154; *Metropolitan C. R. Co. v. C. W. D. R. Co.* 87 Ill. 318; *Swarth v. People ex rel. Paxton,* 109 Ill. 621; *People ex rel. Macey v. Hillsdale & C. T. Co.* 2 Johns. 190; *State ex rel. O'Brien v. Kill Buck T. Co.* 38 Ind. 71; *Att'y Gen. v. Metropolitan R. R. Co.* 125 Mass. 515; *People ex rel. Byers v. Grand River B. Co.* 13 Colo. 11, 21 Pac. Rep. 898; *People ex rel. Farrington v. Whitcomb,* 55 Ill. 172; *Schultz v. State ex rel. Steele,* 65 Ind. 493; *State ex rel. Walker v. Green,* 112 Ind. 462; *People v. Equity G. L. Co.* 141 N. Y. 232.

For the respondents there was a brief by *McCabe & Dahlman* and *Timlin, Glicksman & Conway,* and oral argument by *W. H. Timlin* and *L. A. Dahlman.*

WINSLOW, J.   By this action of *quo warranto* the relators have challenged the right of the defendant corporation to hold and exercise the privileges attempted to be conferred upon it by the common council of Milwaukee by the ordinance of which an abstract appears in the statement of facts. The relator's claim, in brief, is this: The defendant is a commercial railroad corporation organized under sec. 1820, Stats. 1898, and is not authorized by law to operate a street railroad.   The ordinance in question is in fact a street railway franchise, and can only be legally granted to a street railway

corporation organized under sec. 1862, Stats. 1898. The defendant by accepting such franchise by formal written acceptance, and by insisting upon its right to hold and use the privileges granted by the ordinance, is unlawfully "holding" and "exercising" a franchise within the state, within the meaning of subd. 1, sec. 3466, Stats. 1898. On the other hand, the defendant claims that, while the ordinance in question has been termed a "franchise," and is framed in language appropriate for a franchise, it is in reality simply a code of regulations made by the city in the exercise of its police powers; not conferring any rights or privileges upon the defendant, but merely regulating the use of its right to build a railroad across or along any street, which right it obtains directly from the state by the provisions of subd. 5, sec. 1828, Stats. 1898.

The questions upon which the decision of the case depend may be stated as follows: (1) Is the ordinance in question an ordinance granting street railway franchises? (2) If so, can the defendant hold or exercise such franchises? (3) If not, can the relators invoke *quo warranto* as a remedy?

1. As to the first question: The various provisions of the ordinance leave us no room to doubt that it is, in effect, an ordinance attempting to grant a franchise to operate an elevated street railroad in the city of Milwaukee. The fact that it is called a franchise, and that it is couched in terms frequently used in granting franchises, is not, of course, conclusive as to its character. Such terms might be used, and yet, if the provisions themselves were simply police regulations, they would not become franchises because they were so called. But, looking over the whole ordinance, it seems to us very clear that the term "franchise" was used advisedly. It bears nearly or quite all the marks usually borne by street railway franchise ordinances. The rights are granted to the defendant, its successors or assigns. It contemplates that almost the entire road within the city limits shall be con-

structed over and along streets, many of which are much-used business streets, and some containing surface street railways. It also contemplates the construction of stations, stairways, and platforms in the streets for the accommodation of passengers. The provisions as to these stations, stairways, and platforms are elaborate, and seem to be framed with the idea that there will be numerous stations; and this is further made clear by the provision limiting the rate of fare between *two points* within the city of Milwaukee to five cents, and the provision that policemen, firemen, and members of the health department shall be carried free of charge within the city limits. Unless the supposed railway was expected to be to all practical intents and purposes a street railway with numerous stations, these clauses limiting fares within the city limits, and providing free carriage for city employees, would be absolutely nonsensical. Again, the ordinance provides that in return for the rights granted by the ordinance the company shall build bridges, which shall accommodate teams and foot passengers as well as its railroad, and perpetually furnish the power necessary for opening and closing the same. Here the city definitely proposes to exact from the company in return for its privileges an expensive service to be rendered to the city and its citizens. Whether these exactions could be legally made in the proper exercise of the police power it is not necessary to decide (*State ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23, 86 N. W. 657), but, in any event, they tend very strongly to stamp the ordinance as an attempted franchise. We can come to no conclusion except that the ordinance is, and was intended to be, a grant of the right to build a street railway over streets and bridges in the city of Milwaukee, under the provisions of sec. 1862, Stats. 1898.

2. The second question can be answered with little hesitation. It is very clear that the legislature did not intend that ordinary commercial railroads organized under sec. 1820, Stats. 1898, should be endowed with the power of accepting

street railway franchises under sec. 1862. The intention to keep the two classes of companies separate and distinct could scarcely be more clearly expressed than it has been by the statute. Street railway franchises can only be granted to street railway corporations formed under chapter 86, Stats. 1898, for the purpose of building and operating street railways. This is so plain, under the provisions of sec. 1862, *supra,* that we will spend no further time upon the question. Indeed, this proposition was not disputed by appellant's counsel.

3. We thus come to the question whether the relators have chosen the proper remedy. Our statute provides (sec. 3466, Stats. 1898) that an action may be brought by the attorney general in the name of the state "when any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or *any franchise* within the state," and that such action may be brought by a private person on his own complaint when the attorney general refuses to act. It is alleged in the complaint in the present case that the attorney general, on due application to him, has refused to act, and this is expressly admitted in the answer; hence it is clear that, if it appear by the answer that the defendant is a person usurping or unlawfully "holding or exercising a franchise within this state," no defense to the action is shown. It was held in *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 441, 83 N. W. 697, that a private corporation is a "person," within the meaning of this statute, and that a franchise to operate a system of public waterworks in a city, using the streets and alleys for that purpose, while not a corporate franchise in the sense that it is necessary to corporate existence, is still a franchise within the meaning of the section quoted, and may be annulled for cause by *quo warranto* proceedings. A street railway franchise is of the same nature as the franchise considered in the case just cited. While not a corporate franchise, it is a special privilege

granted by sovereign authority, and the state may always in-
quire into the title by which it is held, and render judgment
of ouster if the party assuming to exercise it has no title
thereto. High, Extr. Rem. (3d ed.) § 648. It is well under-
stood that there must be something more than a mere *claim* of
the franchise or privilege in order to justify an action of *quo
warranto*. There must be a usurpation or an unlawful hold-
ing or exercising of the franchise, as the statute indicates.
Indeed, the very form of the ancient writ demonstrates this.
It commanded the defendant to show by what right *(quo
warranto)* he exercised the franchise, having no lawful grant
thereof. The principle is well illustrated in *Att'y Gen. v. S.
& St. C. R. Co.* 93 Wis. 604, 67 N. W. 1138, where it was
said, quoting from *People v. Thompson,* 16 Wend. 657:

"There must be a *user* or *possession* of the office or fran-
chise to authorize the information, and a mere claim is in-
sufficient."

That was a case where the legislature had passed an act
amending the charter of a railroad corporation and granting
it additional privileges. The claim on the part of the at-
torney general was that the corporation, by long nonuser, had
surrendered its charter, and ceased to exist, and hence could
not exercise the rights attempted to be granted to it by the
amending act. There was no allegation in the proposed in-
formation that the corporation had accepted the provisions of
the amending act, nor that it had used or attempted to use the
rights and privileges in terms conferred by the amending
act; and it was held that the vague and uncertain allegation
in an unverified statement by way of showing cause (signed
only by the attorneys of the company, and in no sense an
answer to the information) that it "is exercising and intends
to exercise the rights, privileges, and franchises conferred"
by the act, did not aid the information, and hence the motion
for leave to file the information and bring the action was de-
nied, because it was not shown that there was anything more

than a mere claim on the part of the defendant. In the present case, however, the situation is essentially different. The ordinance required the defendant to accept it in writing within a specified time, and the defendant within that time filed a formal written acceptance thereof with the city clerk. Had the defendant been a street railway corporation, and able to accept such a grant, it is well settled that by such acceptance it would have assumed a public trust. It would have thereby become its duty to serve the public by building and operating its road; not simply because of the contract it had made, but because of the public duty involved by the acceptance of a legislative grant. It might be compelled to carry out that duty, or action could be brought by the state to forfeit its franchises and vacate its charter for failure to perform it. *Wright v. Mil. E. R. & L. Co.* 95 Wis. 29, 69 N. W. 791. In *Stedman v. Berlin,* 97 Wis. 505, 73 N. W. 57, where a franchise of a public waterworks company was in question, and no work had been done, and there was no holding or possession of the franchise save that resulting from an acceptance thereof, and the filing of a bond to perform its terms, it was held that in that case the remedy was not by action in equity at the suit of a private party, but by *quo warranto* or *scire facias* at the suit of the state, because the party was in the exercise of the privileges conferred. The simple principle is that the defendant in *quo warranto* must be unlawfully holding or exercising the franchise, or else the action will not lie. In the case of *Att'y Gen. v. S. & St. C. R. Co.* 93 Wis. 604, 67 N. W. 1138, there was no holding or exercising of the franchises attacked. The company had not formally accepted the act in writing, nor had it accepted it by acting under any of its provisions. The most that could be said was that it had made a mere claim. But in the present case the defendant had accepted the franchise granted by a formal acceptance under seal, as the ordinance required. It has thus not only made a contract with the public to carry

out its provisions, but has become charged with a duty so to do (providing it had legal power to accept such a franchise). Under these circumstances we can see no escape from the legal conclusion that it is holding and exercising the franchise as fully as if it had started to build its structure, and removed a few wagon loads of earth, or planted a few foundation stones. It may be remarked in the present case that the answer alleges that the company has already spent large sums in surveying the route in the city of Milwaukee, and in procuring plans for its bridges, so that it appears by the answer itself that there has been an actual acceptance of the ordinance by commencing work under it. However, we prefer to base our conclusions upon the formal written acceptance.

This opinion has perhaps been carried to greater length than necessary. The trial judge decided the case in a brief opinion, which very pithily disposes of most of the material questions involved, and which we cannot forbear quoting in full, as follows:

"The defendant is a commercial railroad, not a corporation formed for street railway purposes. The authority of the city of Milwaukee in the premises is confined to such reasonable police regulations as may be proper. The ordinance in question is, by its express terms, a franchise. Authority for such grant from the city is found only in sec. 1862, Stats. 1898, and extends merely to street railway corporations. The franchise granted by the common council is therefore without warrant in law. The action is properly brought, and it is the determination of the court that the defendant holds such franchise unlawfully."

*By the Court.*—Order affirmed.