588    SUPREME COURT OF WISCONSIN.    [Dec.

State ex rel. Smythe v. Milwaukee Ind. Tel. Co. 133 Wis. 588.

STATE EX REL. SMYTHE, Appellant, vs. MILWAUKEE INDE-
PENDENT TELEPHONE COMPANY, Respondent.

*September 26—December 13, 1907.*

*Municipal corporations: Ordinances: Franchises: Ouster: Police reg-
ulations: Telephone companies: Exercise of franchises: Estop-
pel: Quo warranto: Statutes: Construction: "Person:" Plead-
ing: Parties.*

1. An ordinance of a municipal corporation provided, among other
things, that the defendant was thereby authorized and permit-
ted to construct, maintain, and operate a public telephone ex-
change and system in the city, and for that purpose was au-
thorized and empowered to enter in and upon the streets, ave-
nues, alleys, and other public grounds and ways within the city
for the purpose of erecting, maintaining, and operating such
telephone system. The ordinance also contained many provi-
sions which embodied conditions and agreements respecting the
exercise of franchises and public functions, among which were
those establishing a schedule of rates to be charged for serv-
ices rendered; those requiring the payment of a portion of its
earnings above a specified amount as a revenue to the city; the
payment to its patrons of rebates out of its earnings in excess
of certain amounts; the payment of the expenses of legal pro-
ceedings in actions by parties other than the company for the
enforcement of the ordinance; the furnishing of telephones to
the city free of charge; obligating the company to connect its
system with long-distance systems operating in the city; re-
quiring the company to employ none but union laborers in good
standing in trade organizations and to pay such employees the
wage scale of their respective organizations; and providing
that the proposed telephone system and property connected
therewith should be transferred to the city upon written notice
and prescribed conditions. *Held:*

(1) The ordinance attempted to grant the right to exercise
privileges, franchises, and public functions and to deal with
powers wholly outside the city's field of police regulation.

(2) The provisions of the ordinance transgressed the power
committed to the city to regulate the manner in which a tele-
phone company might use and occupy the city streets and other
public places.

(3) The ordinance was an exercise by the city of legislative

functions not delegated to it, which rendered it void and ineffectual.

(4) The rights and privileges attempted to be conferred pertain to a class of powers which are public in their nature and which do not belong of common right to persons generally, are such as can only be exercised under authority from the state, and which when so granted constitute property, the title to which is in the grantee.

2. Defendant, organized under the laws of Wisconsin for the purpose of conducting a telephone business, having the right under sec. 1778, Stats. (1898), to occupy streets of a city for maintaining and operating such business, in accordance with the provisions of a municipal ordinance attempting to confer upon defendant the right to conduct its business, but which added nothing to the powers and privileges conferred by the general laws of the state, filed with the city clerk a written acceptance of such ordinance and treated it as valid. The ordinance was void as an attempt to grant privileges, franchises, and public functions contrary to law, and vested no right in defendant to their exercise. *Held*, that such written acceptance constituted an exercise of the franchises so attempted to be conferred, operated in law to place defendant in the position of actually exercising such rights and powers, and estopped it to deny such exercise.

3. In such case a complaint alleging such ordinance and such acceptance states facts sufficient to charge the defendant with having usurped and unlawfully exercised the powers, franchises, and public functions of the state, and hence, under sec. 3466, Stats. (1898), the remedy of *quo warranto* is appropriate to oust defendant from their exercise.

4. A corporation exercising privileges, franchises, and public functions under an invalid municipal ordinance attempting to confer such rights is a "person" within the calls of sec. 3466, Stats. (1898), authorizing judgment of ouster against any person exercising a franchise without warrant in the law.

5. In an action of *quo warranto* to oust a corporation from the exercise of privileges, franchises, and public functions under an invalid municipal ordinance attempting to confer such rights, the complaint alleged that the relator was a resident, elector, and taxpayer of the city and that on due application the attorney general had refused to act. It also appeared that the city might become involved in the expenditure of money on account of the ordinance. *Held*, that the right of relator to institute the action sufficiently appeared.

State ex rel. Smythe v. Milwaukee Ind. Tel. Co. 133 Wis. 588.

APPEAL from an order of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

This is an action by the state of Wisconsin on the relation of *Ernest E. Smythe* to oust the defendant from exercising certain franchises and privileges. The relator is a resident, elector, and taxpayer of the city of Milwaukee. The defendant is a corporation organized under ch. 86, Stats. (1898), and has for one of its purposes the construction, maintenance, and operation of a public telephone exchange and system in the city of Milwaukee. On April 30, 1906, the Milwaukee Telephone Company, the defendant, applied to the city for an ordinance granting it the right to conduct a telephone business in the city of Milwaukee. Accompanying the application was a proposed ordinance. The proposed ordinance was amended by the council in accord with the recommendations of the council committee and independently thereof, and as so amended was passed by the council by a vote of 45 to 1. The complaint alleges that the city of Milwaukee granted to the defendant franchises and public privileges and that the defendant now holds and exercises the powers so granted by this ordinance; that the city had no power or authority to confer the rights, privileges, and franchises attempted to be granted by this ordinance upon the defendant, and that under this attempted and pretended grant the defendant has no right to exercise and hold the same, and that the relator has applied to the attorney general of the state to bring this action and the attorney general has refused to act.

The ordinance, among other things, provided as follows: Authority and power is conferred upon the telephone company to enter in and upon the streets, alleys, avenues, and other public grounds and the rivers and their branches within the city for the purpose of erecting, maintaining, and operating the telephone system, and to lay conduits for wires and cables and to erect poles and to place wires thereon for building, maintaining, and operating a telephone system in

13]          AUGUST TERM, 1907.          591

State ex rel. Smythe v. Milwaukee Ind. Tel. Co. 133 Wis. 588.

the city. The company is required to use the latest and most approved apparatus and to place conduits within certain territory. The city is to have the use of certain cross-arms on the poles and to a duct in the conduit for its telegraph and telephone wires. The company is required to keep its books and records and to maintain its headquarters and offices in the city of Milwaukee, and to allow examination and inspection of its books for the purpose of determining its taxable value. The telephone company is required to pay certain percentages of its gross annual earnings to the city and to pay a rebate to its patrons out of the total excess of its net earnings above ten per cent. For the purpose of determining the net earnings of the company it is required by the ordinance to submit its books to a committee of three persons, one from each of the dominant political parties, to be appointed by the mayor of the city. The telephone company is required to bear the expense incurred by any patron in enforcing in legal or other proceedings the provisions of the ordinance. The ordinance provides for the purchase and transfer of the plant to the city and the way in which the price is to be fixed by arbitrators. The company is required not to make contracts for more than a year after notice of the city's intention to purchase, and the city, in the event of purchase, is to guarantee the debts of the corporation, the debts not to exceed the actual cost of the plant. The telephone company is required to obtain 5,000 subscribers, and is not to charge for any service until they have been obtained. It is to furnish the city with twenty-five telephones free of charge and additional ones at a certain fixed rate. Delays caused by court proceedings are not to be included as part of the time allowed for installing the plant. Under the ordinance the company is to make long-distance connection under reasonable regulations and at reasonable rates, and the rights acquired under the ordinance are to cease if it shall neglect for sixty days without good cause to furnish such connection. A sale of the plant is to

terminate all rights acquired under the ordinance, unless the purchaser shall comply with its provisions. The ordinance established a schedule of rates to be charged for the service it renders to the patrons of the company. The company is to obtain a permit of the board of public works to carry on the work of laying conduits, placing poles, etc. It is provided in the ordinance that only union labor shall be employed by the company and that the union scale of wages shall be paid to employees. The plans of the plant are to be filed with the board of public works, and the city is to be protected and saved harmless from all damages arising out of the construc-- tion or operation of the system. The company is required to file a written acceptance of the ordinance within thirty days of its passage and to file a bond with the city clerk con- ditioned that the company will begin work within thirty days after acceptance of the ordinance and will complete the plant within two years, and for the full and faithful performance of all the obligations undertaken by the company under the ordinance. The ordinance is not to be deemed exclusive or to prevent the grant of similar privileges. The ordinance was duly passed, signed, approved and published, and ac- cepted in writing by the company.

Defendant demurred to the complaint, assigning, among other grounds, that the relator had not capacity to institute this action and that the facts stated were not sufficient to con- stitute a cause of action. The demurrer was sustained. This is an appeal from the order sustaining the demurrer.

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* and oral argument by *J. B. Kemper.*

For the respondent there was a brief by *Winkler, Flanders, Bottum & Fawsett,* and oral argument by *C. F. Fawsett.*

SIEBECKER, J. This action is instituted on the relation of a resident and taxpayer of the city of Milwaukee to oust the defendant from the exercise of public rights, privileges,.

and functions which it is exercising in conducting a telephone business in the city of Milwaukee, and which ostensibly were granted it by the city and accepted by the defendant. The material provisions of the ordinance involved in this action are given in the foregoing statement of facts. The various provisions of the ordinance have been examined with much care to determine their nature and legal effect for the purposes of this case and to ascertain the city's and defendant's purposes in adopting and accepting them. From them it is apparent that the two main objects sought to be accomplished by the adoption of the ordinance were, first, to regulate defendant's use of the streets and other public places of the city, and, secondly, to grant permission to the defendant to conduct a telephone business and to confer the right and to prescribe the conditions for the exercise of these public rights, privileges, and functions. The principal questions before us are: (1) Has the city power to grant the rights and privileges covered by the ordinance? (2) Is the defendant's acceptance of the ordinance an exercise of the privileges, franchises, and public functions conferred under the terms of the ordinance? (3) The right of the relator to institute this action.

In the recent case of *Wis. Tel. Co. v. Milwaukee,* 126 Wis. 1, 104 N. W. 1009, the question of the power of the city of Milwaukee to grant rights and privileges and to impose conditions upon telephone companies for the conduct of such a business in the city was considered, and it was held to be established under the statutes and decisions of this court that:

"No power is conferred upon the defendant [city] under its charter or by any law of the state to grant to the plaintiff the privilege of constructing, maintaining, or operating its telephone lines upon the streets of the . . . city," and that "no authority is conferred upon the defendant [city] to impose any other conditions . . . except such as it may law-

fully impose under its power to control and regulate the streets, alleys, and public grounds and prevent the incumbering thereof, under its general police powers."

It is obvious, therefore, and it is not controverted, that the ordinance can only be sustained as an exercise of the city's police power.  In its first provision the ordinance declares that the defendant

"is hereby authorized and permitted to construct, maintain, and operate a public telephone exchange and system in the city of Milwaukee, and for that purpose the telephone company is hereby authorized and empowered to enter in and upon the streets, avenues, alleys, and other public grounds and ways within the city, for the purpose of erecting, maintaining, and operating said telephone system."

The ordinance also contains many provisions which embody conditions and agreements respecting the exercise of franchises and public functions.  Among this class of provisions are those establishing a schedule of rates to be charged for the services rendered by the defendant; the payment of a portion of its earnings above a specified amount as a revenue to the city; the payment to its patrons of rebates out of its earnings in excess of certain amounts; the payment of the expenses of legal proceedings in actions by parties other than the company for the enforcement of the ordinance; the furnishing of telephones to the city free of charge; obligating the defendant to connect its system with long-distance systems operating in the city; requiring the defendant to employ none but union laborers in good standing in trade organizations and to pay such employees the wage scale of their respective organizations; and providing that the telephone system and the property connected therewith shall be transferred to the city upon compliance by it with the provisions of the ordinance for its purchase, pursuant to written notice and other conditions it prescribes.  It is manifest from the nature and context of the provisions on these subjects that the

ordinance attempts to grant the right to exercise privileges, franchises, and public functions, and thus attempts to deal with powers wholly outside the city's field of police regulation. These provisions of the ordinance clearly transgress the power committed to the city to regulate the manner in which defendant may use and occupy the city streets and other public places. In terms such provisions manifestly confer privileges, franchises, and public functions which the city has no authority to grant. This exercise by the city of a legislative function not delegated to it renders the ordinance void and ineffectual. *State ex rel. Vilter Mfg. Co. v. M., B. & L. G. R. Co.* 116 Wis. 142, 92 N. W. 546; *Marshfield v. Wis. Tel. Co.* 102 Wis. 604, 78 N. W. 735; *State ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23, 86 N. W. 657; *State ex rel. Wis. Tel. Co. v. Sheboygan,* 114 Wis. 505, 90 N. W. 441. The attempt to grant, confer, and delegate rights and privileges constituting franchises and public functions of the state, whereby the rates for services are established, a revenue is to be paid to the city, and other public powers are to be exercised over the subjects above specified, is an act beyond the authority of the city. They pertain to a class of powers which are public in their nature and which do not belong of common right to persons generally. Such powers can only be exercised under authority from the state, and when franchises are so granted they constitute property, the title to which vests in the grantee. *Sellers v. Union L. Co.* 39 Wis. 525; *Madison v. Madison G. & E. Co.* 129 Wis. 249, 108 N. W. 65. Since the attempted grant of these privileges, franchises, and public functions, under the circumstances, vested no right in defendant to exercise them, the inquiry arises: Does the conduct of the defendant in accepting them as though they were valid amount to a usurpation of the powers and franchises of the state?

It is without dispute that the defendant is organized under the laws of this state for the purpose of conducting a tele-

phone business, and that as such corporation it may exercise the powers and privileges granted by sec. 1778, Stats. (1898), as amended, which confers upon telephone companies the right to occupy the streets of a city for maintaining and operating a telephone business. The city's attempt to confer on the defendant the right to conduct a telephone business added nothing to the powers and privileges conferred on it by the general laws of the state, and such grant by the city was wholly unnecessary for the exercise of them. But the defendant has treated the ordinance as a valid one, and has complied with the condition of it respecting its acceptance by filing with the city clerk a written acceptance of it. The effect of such a written acceptance of an ordinance attempting to grant such rights, powers, and privileges was considered by this court in *State ex rel. Vilter Mfg. Co. v. M., B. & L. G. R. Co.,* supra, and it was there held that such acceptance constituted an exercise of the franchises so attempted to be conferred and operated in law to place the defendant in the position of actually exercising the rights and powers attempted to be conferred by the ordinance. Under such circumstances the defendant by its acceptance is estopped from denying that it is exercising these public rights, privileges, and functions. The supreme court of California in an analogous case observes:

"In such case would the intruder be permitted to say, 'I have not usurped a franchise, because there can be no franchise without a grant.' The response would be: 'You have usurped a power of the government. You cannot act as if you had the franchise and say you are not exercising it.'" *Ex parte Henshaw,* 73 Cal. 486, 493, 15 Pac. 110.

To the same effect is the holding in *State ex rel. Vilter Mfg. Co. v. M., B. & L. G. R. Co.,* supra, where a commercial railroad accepted a franchise from the city of Milwaukee to operate a street railway. This was declared as unauthorized for want of power in the railroad company to exercise the

rights so conferred, and it was resolved that its acceptance
by the company constituted the exercise of franchises and re-
sulted in the usurpation of the franchises of the state. *Peo-
ple ex rel. Att'y Gen. v. Utica Ins. Co.* 15 Johns. 358; *Comm.
v. Del. & H. C. Co.* 43 Pa. St. 295. Since defendant under
the facts and circumstances must be held to be in the exer-
cise of the rights so attempted to be conferred, it results that
it is guilty of having usurped and of now unlawfully exercis-
ing the powers, franchises, and public functions of the state.
It follows that the complaint states facts sufficient to charge
the defendant with being in the exercise of these powers of
the state and thus of being guilty of usurping them. Under
sec. 3466, Stats. (1898), the remedy of *quo warranto* is ap-
propriate to oust the defendant from the exercise of them.
It is a "person" within the provisions of this section, and,
if it be found to be in the exercise of powers and franchises
without warrant in the law, judgment of ouster may be
awarded against it. *State ex rel. Att'y Gen. v. Portage City
W. Co.* 107 Wis. 441, 83 N. W. 697; *State ex rel. Vilter
Mfg. Co. v. M., B. & L. G. R. Co.* 116 Wis. 142, 92 N. W.
546.

It is averred that the relator has not sufficient interest in
the subject matter of this action to enable him to institute
it. The complaint alleges that relator is a resident, elector,
and taxpayer of the city of Milwaukee. He avers that he
is authorized to prosecute this action under sec. 3466, Stats.
(1898), providing for the bringing of actions by the attorney
general in the name of the state upon his own information or
the complaint of any private party, and further providing:

"Such action may be brought in the name of the state by a
private person on his own complaint when the attorney gen-
eral refuses to act. . . . "

In *State ex rel. Wood v. Baker,* 38 Wis. 71, it is stated:

"Before such a statute the courts of the state might per-
haps, in proper cases, have authorized proceedings in the

name of the attorney general, if that officer wrongfully refused to act and it was necessary to proceed in his name. Be that as it may, this branch of the section gives a new proceeding by private parties in the name of the state, without the use of the attorney general's name or office, in cases of local office, and in all cases in which that officer refuses to act. This is plainly in the nature of a civil action, although in the name of the state."

It stands admitted that the attorney general has refused to act. Under the terms of the statute, upon the attorney general's refusal to act, the action, though one by the state, may be prosecuted on the relation of a private party. If the relator is a taxpayer he has sufficient pecuniary interest in the matter, if the exercise of the powers and franchises may involve the city in a pecuniary way. That the city may become involved in the expenditure of money on account of this ordinance, through litigation concerning it, the purchase of the business, and in other ways as a party to it, is readily perceived. If so, then the city's money may be unlawfully and unnecessarily wasted through an unauthorized channel. *State ex rel. Weinsheim v. Leischer*, 117 Wis. 475, 94 N. W. 299.

The ordinance being void and the defendant having no lawful right to exercise the powers and franchises it has thus usurped, it must result that the complaint states facts sufficient to constitute a cause of action and to oust it from such usurpation, and the demurrer should have been overruled.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions that the circuit court enter an order overruling the demurrer and for further proceedings according to law.

Kerwin and Timlin, JJ., concur in the foregoing opinion.

Dodge, J., dissents.

WINSLOW, J. (*concurring*). While I am fully in accord with the decision reached in this case, I do not agree with some of the reasoning contained in the opinion. If I rightly understand it, the opinion holds that the contract features of the ordinance (such as the fixing of rates, the payment of a part of its revenues to the city, and the like) constitute of themselves public privileges or franchises which the city had no authority to grant, and it is only by reason of the existence of these provisions that the ordinance is condemned and the defendant found to be guilty of usurping a franchise. I cannot agree with this idea. In my judgment the unlawful franchise consists in the attempted grant of the right to use the public streets and ways of the city and to carry on its business therein. The many contract provisions cannot in any sense be considered as franchises or grants of privileges, but they simply serve to demonstrate very clearly that the city in attempting to grant the use of its streets to the company was attempting to grant a franchise and was not attempting simply to exercise its police power. As said in the case of *State ex rel. Vilter Mfg. Co. v. M., B. & L. G. R. Co.* 116 Wis. 142, 92 N. W. 546, such contract provisions and exactions tend very strongly to stamp the ordinance as an attempted franchise, and repel the idea that it was intended simply as a police regulation. For this purpose they seem to be very significant, but not otherwise.

The grant of the right to use the streets for the purpose of conducting its business being the real franchise which is attacked, we are met with the proposition that the company already had this right by grant from the state, and hence that the attempted grant by the city is not a franchise in any sense, and *quo warranto* will not lie when no franchise has been usurped. This is the serious question in the case, and one upon which there is very little authority so far as my researches have gone. In the California case cited in the opinion (*Ex parte Henshaw,* 73 Cal. 486, 15 Pac. 110) it

was held that one who was assuming to exercise the duties of an office which had been abolished by the repeal of the statute creating it was estopped, in an action brought against him for usurpation of the office, from denying the existence of the office. The argument in support of this conclusion is persuasive, but there is another view which I think logical and satisfactory. · The city council has legislative powers within certain prescribed limits. Presumably, when it attempts to legislate and passes an ordinance with all the required formalities, such ordinance is a valid exercise of its legislative power. On its face the ordinance appears to be a valid grant of privileges, and especially would it have such appearance to business men and investors who could not be presumed to know that it was worthless. Thus it might easily be used as a basis of credit or as an inducement to invest money in the company obtaining it and might well deceive innocent third persons. It is not the case of an attempted grant of privileges or franchises by a person or body having no legislative power, which attempt might well be regarded as an absolute nullity. On the other hand, it takes the form of a local law solemnly passed by a lawmaking body and spread upon its records. It seems that there should be some way of testing the validity of this apparently valid legislation and of eliminating it from the records by an authoritative judgment and thus preventing its use for any purpose. In my judgment *quo warranto* may rightly and logically be used for this purpose, and hence I concur in the judgment.

MARSHALL, J. I concur in the above opinion by Mr. Justice WINSLOW.