CHAPIN and another VS. CRUSEN and another.

31 209
95 533

31 209
59 LRA 523n
59 LRA 533n
59 LRA 535n
59 LRA 555n

*Statute, when a contract. — Repeal by implication — Constitutional law. — Ferry franchise.*

1. A statute conferring a franchise is not to be construed as a contract on the part of the state, unless it shows by its terms that such was the intent of the legislature.

2. Ch. 413, P. & L. Laws of 1865, granted to A and his associates, heirs, executors, administrators and assigns, the exclusive right of keeping a ferry at a certain point on the Wisconsin river *for ten years*, with the right to bridge the north branch of the river at the place named, and declared that no ferry should be granted within one mile of the same. *Held*, that there was no contract, and the legislature had power to repeal the act, and thus deprive A or his assigns of the franchise before the expiration of the ten years, and after a ferry had been established by them.

3. If the act had expressly provided that it should have the force of a contract; or if it had provided that the grant was *upon condition* that the grantee or his assigns would conduct the ferry in a certain manner and at certain rates of ferriage for the ten years; or, perhaps, if the operating of the ferry had involved a large expenditure of money in permanent improvements, which would be of little or no value without the franchise — there would be some ground for saying that the franchise rests in compact and is irrepealable. But none of these facts existed in this case.

4. An act granting an exclusive franchise to A, his heirs, assigns, etc., is repealed by implication, *pro tanto*, by a subsequent grant of the same exclusive franchise to A and B, *their* heirs, assigns, etc.; and this, although the subsequent act purports merely to *amend* the prior one.

5. On this principle, ch. 455, P. & L. Laws of 1869, repealed so much of ch. 413, P. &. L. Laws of 1865, as conferred the franchise above described; and whatever rights defendants had acquired as assigns of A under the earlier act, were gone after the passage of the later one.

6. The grantees named in the act of 1869, having taken their boat to the proper place for the purpose of operating the ferry under the law, and having twice extended their cable across the river, are *held* to have *accepted* the franchise, and to be entitled to maintain an action for a violation thereof, although, after such cable had twice been broken down (by whom does not appear), they made no further effort to exercise the franchise before bringing this suit to restrain defendants from operating a ferry in the same place.

7. The granting of a ferry franchise on the Wisconsin river does not interfere with the free navigation thereof, and is therefore not in violation of sec. 1, art. IX. of the state constitution.

8. The fact that the legislature, under sec. 22, art IV., of the constitution, had conferred upon all county boards power to license ferries, did not prevent a direct legislative grant of such a franchise before the adoption of the constitutional amendment known as sec. 31, art. IV., which *deprives the legislature of such power in all cases where the ferry is wholly within this state.

9. Before the adoption of said amendment, there was no constitutional provision which prevented the legislature from granting an *exclusive* franchise of the kind here in question for a limited time. *State v. Milwaukee Gas Light Co.*, 29 Wis., 454.

APPEAL from the Circuit Court for *Iowa* County.

This action was brought to recover damages for the alleged interference by the defendants in the enjoyment of a certain ferry franchise across the Wisconsin river, and for an injunction to restrain any future interference therewith.

By sec. 1, .chap. 413, P. & L. Laws of. 1865, the legislature granted to the plaintiff *E. Chapin*, his associates, heirs, executors, administrators and assigns, the exclusive right and privilege of keeping and maintaining the ferry in question for the period of ten years. It also gave *Chapin* or his associates the right to bridge the north branch of the river at the designated point, and enacted that no ferry should be granted within one mile either above or below said ferry. The place where the ferry should be located was particularly specified. The remaining sections of the act fix the rates of toll, and prescribe certain rules for managing and operating the ferry. *Chapin* never operated the ferry under the act of 1865, but it seems that he made a verbal assignment of the franchise to one of the defendants, in the fall of 1865, or the following spring, and in September, 1866, the defendants, on the faith of such assignment, placed a cable across the river, put on a boat, commenced operating the ferry, and continued to operate the same until after the commencement of this action.

By chapter '455, P. & L. Laws of 1869, the legislature so

amended the act of 1865, that there was thereby granted to *E. Chapin* and *R. L. Telfair, their* heirs, executors, administrators and assigns, the exclusive right and privilege of keeping and maintaining said ferry for ten years, *from the* 1*st of April*, 1869. It further provided that no ferry should be granted within *two* miles east, or one mile west, of said ferry. The law of 1869 commences as follows:

"Section 1 of chapter 413, private and local laws of 1865, is hereby amended so as to read as follows:"

The remaining provisions of the law of 1869 are the same as those contained in the law of 1865, with the exceptions above mentioned.

In May, 1870, the plaintiffs stretched a cable across the river, and took a boat there for the purpose of operating the ferry; but the cable was broken down in a day or two thereafter. The plaintiffs restored it, and it was again broken down, but by whom does not appear in either case. Before the plaintiffs could put up their cable the third time, the defendants stretched their cable across the river at nearly the same place, although forbidden to do so by one of the plaintiffs, and from thence used and enjoyed the ferry franchise.

There was considerable testimony given on the trial tending to show that, in operating the ferry, the defendants had not properly accomodated persons who desired to cross the river at such ferry. It is unnecessary to state this testimony at length.

The questions litigated upon the trial were: 1st, The effect of the alleged verbal assigment by *Chapin* to the defendant *Edmond Crusen*, of the franchise granted by the law of 1865, so far as the same might be affected by the statute of frauds; and 2nd, Whether the defendants had been guilty of such neglect in the management as to work a forfeiture of their rights under that law. The instructions given by the court to the jury were confined to these two questions.

The defendants had a verdict and judgment; and the plaintiffs appealed from such judgment.

*M. M. Cothren,* for appellant:

1. The assignment of a ferry franchise must be in writing and for value, and all the parties in whom the franchise is vested must join. Here there was neither writing nor consideration, and *Chapin's* associates were not consulted and did not join. Such a franchise is an incorporeal hereditament, appurtenant to the soil. It is real estate, and must be conveyed in the same manner as other real estate. *Benson v. Mayor, etc.,* 10 Barb., 223, 245; *Bowman v. Wathen,* 2 McLean, 376; *Mills v. County of St. Clair,* 2 Gilman, 197; *Lombard v. Cheever,* 3 id., 469; *McEwen v. Taylor,* 4 Greene, 532; *Conway v. Taylor,* 1 Black (U. S.), 603; *Dundy v. Chambers,* 23 Ill., 369; *Perrin v. Oliver,* 1 Minn., 202. A parol conveyance of a ferry franchise would contravene the statute of frauds. R. S., chap. 107, sec. 6; 14 Wis., 69. Equity will not enforce such a contract on the ground of part performance, unless it is fair, just and certain, and is founded on an adequate consideration. 2. The legislature had the right to amend the original charter as it did by the act of 1869, associating another person with the grantee.

*M. M. Strong,* for respondent:

1. The plaintiffs never attempted to use the franchise claimed by them until more than a year after it was granted, and could not then use it, in consequence of high water, until after the commencement of this action; consequently, they had sustained no damages, and the verdict was right. 2. The legislature had no constitutional power to grant this franchise, because, (1.) The Wisconsin river is a " common highway, and forever free to the inhabitants of this state." Ordinance of 1787, art. 4; Const. of Wis., art. IX., sec. 1; R. S., ch. 41, sec. 1; Amendment to Const., Laws of 1871, p. 272. (2.) The legislature had conferred upon the board of supervisors the sovereign power of granting ferry franchises. Const., art. IV., sec. 22; R. S., ch. 20, pp. 272, 273. 3. The plaintiffs acquired no rights under the act of 1869, there being no evidence of accept-

ance of the grant. *Ferrell v. Woodward*, 20 Wis., 458; Angell & Ames on Corp., §§ 82–3. 4. A ferry franchise is not an " estate or interest in lands." 13 Am. Law Reg., 513 (July, 1865); 3 Kent's Com., 458; *Prosser v. Wapello Co.*, 18 Iowa, 333; *Trustees, etc., v. Tatman*, 13 Ill., 30; *Munroe v. Thomas*, 5 Cal., 470; *Rees v. Lawless*, 6 Littell, 184; *Smith v. Goulding*, 6 Cush., 154; *McRoberts v. Washburne*, 10 Minn., 23; *Whitmarsh v. Walker*, 1 Met., 313; *Claflin v. Carpenter*, 4 id., 580; *Sampson v. Burnside*, 13 N. H., 264; *Knott v. Frush*, 2 Oregon, 237; *Newton v. Cubitt*, 12 C. B. (N. S.), (104 E. C. L.), 30. 5. After part performance of a contract void by the statute of frauds, a court of equity can decree specific performance. Browne on Stat. of Frauds, chap. 19, § 437 et seq.; *Adams v. Patrick*, 30 Vt., 520; *Admr. of Pike v. Morey*, 32 id., 37; *Kidder v. Barr*, 35 N. H., 254–5; *McCray v. McCray*, 30 Barb., 633; *Traphagan v. Traphagan*, 40 id., 537; *Williston v. Williston*, 41 id., 635; *Ramsey v. Liston*, 25 Ill., 114; *Stevens v. Wheeler*, id., 308; *Blunt v. Tomlin*, 27 id., 100, 101; *Mason v. Blair*, 33 Ill., 207; *Keys v. Test*, 33 id., 316; *New Orleans etc. R. R. Co. v. Moye*, 39 Miss., 375; *School Dist. v. Macloon*, 4 Wis., 79; *Smith v. Finch*, 8 id., 245; *Daniels v. Lewis*, 16 id., 140; *Fitzsimmons, v. Allen*, 39 Ill., 440; *Moory v. Beasley*, 3 Ohio, 296; *Merithew v. Andrews*, 44 Barb., 200; *Woodbury v. Parshley*, 7 N. H., 237; *Paine v. Wilcox*, 16 Wis.; 202; *Arguello v. Edinger*, 10 Cal., 157 et seq.; *Eaton v. Whitaker*, 18 Conn., 222. 6. If the agreement between *Chapin* and *Crusen* was a mere license, revokable at the pleasure of *Chapin* he never did revoke it.

LYON, J. The view which we have taken of this case renders it quite unnecessary to review in detail the instructions which were given to the jury. Assuming, for the purposes of the action, that the plaintiff *Chapin* made a valid assignment to *Edmond Crusen* of the franchise granted by the law of 1865, by virtue of which *Crusen* became the sole owner thereof;

and assuming also that the defendants, in operating the ferry, managed and conducted it properly, and at all times faithfully performed all of their obligations to the public in that behalf; still we are of the opinion that the plaintiffs are entitled to recover.

I. We think that the act of 1869 repeals that of 1865, so far as it granted a ferry franchise to *Chapin*. The former statute is entirely repugnant to the latter, in that another grantee of the franchise is named therein. It is perfectly well settled that, in such case, the former law is repealed, *pro tanto*, by implication. Sedgwick on Stat. and Con. Law, 125, and cases cited; *State v. Ingersoll*, 17 Wis., 631.

The act of 1865 being repealed in so far as it granted a franchise, the defendants can have no rights under it, and the plaintiffs are the owners of the franchise in controversy under the act of 1869, unless the latter act is invalid.

II. Had the legislature power to repeal the grant contained in the law of 1865, before the expiration of ten years from the passage of the act, and confer the franchise upon the plaintiffs? It certainly had that power unless the law amounted to a contract. Laws of this character are to be construed strictly, and no contract is to be inferred from them against the state and in behalf of the grantees. To give to them the force of contracts, they must, by their terms, show that such was the intention of the legislature. *The Proprietors of the Charles River Bridge v. The Proprietors of the Warren Bridge*, 11 Peters, 420. No such intent appears in the law of 1865. Had it provided that the grant was upon condition that the grantee or his assigns would conduct the ferry in a certain manner and at certain rates of ferriage for the ten years; or, perhaps, had the operating of the ferry involved a large expenditure of money in permanent improvements, which would be of little or no value without the franchise; or had it expressly provided that it should have the force of a contract — there would be some ground for saying that the franchise rests in compact, and is irrepealable. But this law has none of these features. There

was no obligation upon *Chapin* or his assigns to accept the franchise, or, if accepted, to retain it. He or they might abandon it at any time without incurring any liability whatever. No large expenditure was required, and none whatever for permanent fixtures or improvements, or at most but very little. The boat and cable used in operating the ferry cost comparatively but a small sum, and were available for other purposes after the franchise was taken away. Under these circumstances, we can see no valid ground for a claim that the law of 1865 operates as a contract between *Chapin* and the state. On the contrary, it seems to us that it was merely the grant of a public privilege, or a license to exercise a public franchise, which the legislature might revoke at pleasure, and that the defendant *Edmond Crusen* took the assignment from *Chapin* subject to that incident.

These views may perhaps be strengthened by the provision of the constitution, art. XI., sec. 1, which gives the legislature power to alter or repeal the charters of corporations created by it. Had this franchise been conferred on such a corporation, there can be no doubt that the legislature might take it away. Does the fact that it was conferred upon a natural person alter the case?

III. But it is claimed by the learned counsel for the defendants, that the legislature had no power to grant the franchise to any person. Two grounds are urged in support of this proposition: *First*, That the exercise of such power is prohibited by art. IX., sec 1, of the constitution, which ordains that the Mississippi river, and the navigable waters leading into it, shall be common highways and forever free, as well to the inhabitants of this state, as to the citizens of the United States, without any tax, duty or impost therefor. *Secondly*, Because the legislature, having, by the revised statutes, chap. 20, conferred upon the respective boards of county supervisors the power to grant licenses to keep ferries, pursuant to sec. 22

of art. IV, of the constitution, is thereby disqualified to grant such franchises directly.

The answer to the first ground is, that the granting of a ferry franchise does not interfere with the free navigation of the Wisconsin river; and to the second, that the constitution does not prohibit the legislature from granting such franchises after it has conferred such power upon the boards of supervisors. Indeed, this power is one that has been constantly exercised by state and colonial legislatures from the first settlement of the country. In this state, however, the power is now taken from the legislature in all cases where the ferry is wholly within the state, by the late constitutional amendment, art. IV.,sec. 31.

IV.   It is further objected that the plaintiffs never accepted the franchise granted to them by the law of 1869, and can therefore claim no rights under that law. But it seems to us that, by stretching their cable across the river twice, and taking their boat to the place where the law located the ferry, for the purpose of operating the same under the law, the plaintiffs did accept the franchise, and are entitled to enjoy it without interference from the defendants or others.

V.   Prior to the adoption of the amendment above referred to, there was no constitutional provision which deprived the legislature of the power to grant an exclusive right to the use of a franchise of this kind for a limited time. It was so held by this court at the present term in the case of *The State of Wisconsin v. The Milwaukee Gas Light Co.*, 29 Wis., 454.   See also the treatise of Mr. Sedgwick before cited, p. 625.

If these views are correct, it necessarily follows that the learned circuit judge erred when he instructed the jury, as he did in substance, that if they found a valid assignment of the franchise was made by *Chapin* to *Edmond Crusen*, such assignment would be a protection to the defendants against the action, unless they had forfeited such protection by neglect of their obligations to the public.

Our conclusion is, that if the defendants have interfered with the plaintiffs' enjoyment of the franchise granted to them by the law of 1869, to the damage of the plaintiffs, the latter are entitled in this action to recover for such damage.

*By the Court.*— The judgment of the circuit court is reversed and the cause remanded for a new trial.