CITY OF MONROE v. DETROIT, MONROE & TOLEDO SHORT LINE RAILWAY.

1. STREET RAILROADS—TRAIN RAILWAY—USE OF STREETS—ORDINANCES.

The grant by a city to a company, organized under the train railway act (§ 6394 et seq., 2 Comp. Laws), of the right to construct and operate a street railway with all necessary tracks and connections, all tracks to be constructed under the supervision and with the approval of the common council, does not authorize the company to make a connection in the streets of the city with the tracks of a company organized and operating under the general railroad law, and having no franchise from the city, though in the ordinances granting franchises to such train railway company, and to another company organized under the general railroad law, a connection between them, and transfers from one to the other, were required.

2. SAME—POWERS OF MUNICIPALITY.

The right of a municipality to refuse its consent to the use of its streets by a street railway is an absolute one, and its power in the first instance to impose conditions is unlimited.

3. SAME — TRAIN RAILWAYS — CONNECTIONS WITH OTHER RAILROADS—USE OF STREETS.

Section 41 of the train railway act (6432, 2 Comp. Laws), authorizing railways organized under that act to make connec-

tions with other railroads, does not take from a municipality its right to supervise and control its public streets, and gives such a company, operating as a street railroad, no right to make a connection with another railroad in a city street without consent of the city authorities.

4. SAME—OPERATION BY GENERAL RAILROAD COMPANY.
Whether a general railroad can own or operate a street railroad under the laws of this State is a serious question.

5. SAME—ORDINANCE—ELECTRIC WIRES—USE OF STREET.
Where the ordinance, under which an electric street railroad is operating, provides that "no wires carrying an electric current shall be placed in said street except the trolley wire," and the company, in the night-time, places an additional feed wire in the street, not a trolley wire, a decree enjoining it from maintaining the wire is proper.

Cross-appeals from Monroe; Kinne, J., presiding.  Submitted February 15, 1905.  (Docket No. 151.)  Decided March 13, 1906.

Bill by the city of Monroe against the Detroit, Monroe & Toledo Short Line Railway, the Toledo & Monroe Railway, and the Monroe Traction Company, to enjoin the defendants' use of a certain street.  From the decree rendered, all parties appeal.  Affirmed.

*Willis Baldwin*, *E. R. Gilday*, and *J. J. Kiley*, for complainant.

*Charles A. Golden* and *John C. Donnelly*, for defendants.

MCALVAY, J.  The defendant Monroe Traction Company, organized under chapter 167, 2 Comp. Laws (§ 6394 et seq.), operated a street railway on Elm avenue in the city of Monroe.  The other defendants are organized under the general railroad laws of the State.  The complainant filed its bill of complaint to enjoin the two last-named defendants from using any part of Elm avenue or the line upon said avenue, and from running and operating any cars thereon, and to enjoin all of the defendants

from making and constructing any connection, switch, or side track upon Elm avenue. By its supplemental bill, complainant claims that defendant Detroit, Monroe & Toledo Short Line Railway, in the night-time, with the consent of the Monroe Traction Company, had, without authority and contrary to the provisions in the franchise of said last-named company, placed in said Elm avenue an additional feed wire, not a trolley wire, and prays that all of said defendants be enjoined from maintaining such feed wire and be required to remove the same.

The rights under which defendant Monroe Traction Company is operated in the streets of the city of Monroe were granted by ordinance September 22, 1902; whereby said defendant was authorized to construct, maintain, and operate a street railway for the conveyance of passengers and baggage, being a single track with necessary switches upon Elm avenue from Monroe street east to the easterly terminus thereof. All tracks provided for in said ordinance to be constructed under the supervision and subject to the approval of the common council. There was a further provision that "no wires carrying an electric current shall be placed in said street except the trolley wire."

On October 30, 1902, the Monroe Traction Company leased its line on Elm avenue for a term of 30 years to the defendant Toledo & Monroe Railway, which was assigned with the consent of the traction company to defendant Detroit, Monroe & Toledo Short Line Railway at or about the time these roads all went into the hands of the short line company. Defendant Detroit, Monroe & Toledo Short Line Railway, operated under and by virtue of its authority as a railroad organized under the general railroad laws of the State, has no franchise from the municipality. It has constructed its road upon a private right of way duly acquired by purchase or otherwise. Defendant Toledo & Monroe Railway, also organized under the general railroad laws, has a franchise from the city of Monroe, dated September 25, 1902, authorizing it to construct and operate a street railway upon Monroe street, from the southerly

limit of the city to and across the river Raisin to Anderson street (the name of this street north of the river), thence northerly on said street to the north city limits, and also on certain other streets in said city. This road was constructed to the intersection of Anderson street with Elm avenue.

At the time of granting the franchise to the two defendant companies, the Toledo & Monroe Railway and Monroe Traction Company, by the city, both roads had been constructed and connection had been made at the intersection of Elm avenue and Anderson street, under former grants which in terms were identical with the franchises granted to these companies, which required this connection to be made, and transfers for a continuous trip within the city limits to be granted upon the payment of one fare. At that time the Monroe Traction Company's line was operated by defendant Toledo & Monroe Railway, the power and rolling stock being furnished by said Toledo & Monroe Railway, under some agreement between the parties. These rights were assigned to the Detroit, Monroe & Toledo Short Line Railway as hereinbefore stated. The short line railway, having constructed its road on its private right of way up to Elm avenue about 1,600 feet east of the intersection with Anderson street, desired to make connection with Monroe Traction Company line on Elm avenue. The Monroe Traction Company consented to this and authorized the work to be done. This case was then commenced upon the theory hereinbefore set forth. The circuit court granted the relief prayed as to the connection with the short line company on Elm avenue, and as to the extra feed wire referred to in the supplemental bill. Both parties have appealed from this decree.

In view of the fact that there is now a suit pending in behalf of the State, brought by the attorney general, in which the questions of the corporate existence of the defendant Monroe Traction Company and its right to exercise its corporate franchise are involved, these questions raised in this case will not be considered. In its objection

to making the connection on Elm avenue by the Monroe Traction Company with the short line railway company, complainant contends that no such right was granted in its franchise and no consent on the part of the municipality had been obtained. The grant referred to authorized said traction company—

"To construct, equip, own, maintain and operate a street railway for conveyance of passengers and baggage, with all the necessary and convenient tracks, side tracks, switches, turntables, turnouts,. and connections, * * * subject to the regulations hereinafter contained * * * a single track with necessary switches in, upon and through Elm avenue. * * * All tracks provided for in this ordinance shall be constructed under the supervision and with the approval of the common council."

We think it would be placing upon this language an unwarranted construction to hold that it authorized the Monroe Traction Company to make a connection in the streets of complainant with the tracks of a corporation organized and operating under the general railroad laws. It is true that a connection was provided for and required to be made with the Toledo & Monroe Company, and transfers for a single fare from one road to the other, in the two franchises granted by the ordinances referred to, indicating that the municipality understood that the Traction Company was to carry passengers, with their baggage, who were intending to make a through trip to Toledo or Detroit. The route northerly to Detroit referred to was along the line of Anderson street, which was included in the grant to the Toledo & Monroe Railway. The contention that this can be of some avail to the defendants in this case is of no force for the reason that such provisions and requirements were within the express grant to the Toledo & Monroe Company and no grant by the city has been given to the short line railway company.

The train railway act is invoked as authority for making the connection in dispute, and it is urged that the grant from the city did not divest the traction company of its

charter rights under said law, but was accepted by the company with reference to its said rights. This statute, some years after its enactment, was amended for the purpose of allowing corporations organized under it to use and operate street railways; but this right is to be exercised only with the consent of the municipal authorities, upon such terms and conditions as such authorities may prescribe. Section 41 of said act [2 Comp. Laws, § 6432] provides, as claimed by defendants, that companies organized under this act shall have the right to make connection with any other railroad corporation, and further provides that when a road is so organized and is intersected by any new road it must unite with such road in making a connection, and grant running and business facilities.

In this case we do not consider it necessary to construe this latter provision, nor to determine whether the short line road would, within the meaning of the statute, be an intersecting road. We need only determine whether the first provision is applicable in this case where the street railway, the traction company organized under this act, is entirely within the limits of the municipality under the terms of a grant accepted by it. The right of a municipality to refuse its consent to the use of its streets by a street railway is an absolute one, and its power in the first instance to impose conditions is unlimited. *City of Detroit* v. *Railway Co.*, 95 Mich. 460 (20 L. R. A. 79). The original train railway act did not give any authority to corporations organized under it to construct, own, or operate railways in and through the streets of any city, or to organize for street railway purposes. From time to time sections were added giving such authority. In no case, however, can any railroad be constructed in such streets without the consent of the municipal authorities first obtained, subject to such regulations, terms, and conditions as to construction, location, and operation, as by them might be imposed. The legislative intent to continue the control of public streets in the municipal authorities is clear. Section 41, which is the last section added

to the act, must be construed with reference to the provisions of the preceding sections. To sustain the construction urged by defendants would defeat the legislative intent, and leave the connecting railroads to determine when, where, and how the connection shall be made in the streets of a city.

In this case the right to use the streets of the city of Monroe was subject to the limitations of the grant itself, and no rights not expressly granted were acquired. The limitations were in the original franchise. The control of the streets was not surrendered by the common council. The plain requirements of the grant were that the line of the road and all its appurtenances should be under the control of the council as to construction, location, etc. The making of this connection sought to be restrained in this suit is admittedly undertaken without the consent of the municipality. Will the fact that the train railway act provides in section 41 for connections to be made with other roads, excuse or justify such action? We think not, and hold that this section of the act does not take from a municipality its right to supervise and control its public streets, given to it by the legislature and recognized in the act itself.

It is admitted in briefs and arguments of counsel for defendants that the short line road is in fact the only party in interest, having by lease or otherwise acquired the right to operate the Toledo & Monroe Railway and the Monroe Traction Company. Whether a general railroad can own or operate a street railway under the laws of this State is a serious question. Under the pleadings and facts in this case, and our views above expressed, it is not necessary to pass upon that question at the present time. The record does not disclose that as yet any use of the street railway line has been made by those operating it other than that allowed by its franchise. The only question remaining for consideration is whether placing the extra feed wire in Elm avenue was allowable. The ordi-

143 MICH.—21.

nance provides that "no wires carrying an electric current shall be placed in said street except the trolley wire." The wire objected to, which was placed in Elm avenue in the night-time, was not a trolley wire. It was put in without authority. Under what claim of right this was done is not explained.

The decree of the circuit court is in all respects affirmed, without costs.

CARPENTER, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.