CITY OF MANITOWOC, Appellant, vs. MANITOWOC & NORTH--
ERN TRACTION COMPANY, Respondent.

*January 12—January 31, 1911.*

*Constitutional law: Remedies: Condition of judgment: Injunction:*
*Carriers: Fixing rates: Interurban railways: Use of streets:*
*Power of city: Contract as to rates: Subsequent changes: Legis-*
*lative power to alter franchises: Railroad commission: Statutes*
*construed: Power of courts.*

1. Where after trial on the merits a circuit court decides that a
   plaintiff is entitled to a permanent injunction as prayed, it is:
   error to make the granting of such relief conditional upon the
   filing of an undertaking that if on appeal judgment shall be
   awarded to defendant plaintiff will pay such damages as defend-
   ant shall have sustained by reason of the injunction. Such a re-
   quirement violates sec. 9, art. I, Const.

2. Until the state sees fit to interpose, a carrier may ordinarily ex-
   ercise a free hand in fixing rates, subject to the qualification
   that such rates must not be unreasonably high nor unjustly dis-
   criminatory, and may enter into a binding contract on the sub-
   ject with the municipality from which it receives a franchise.

3. Under sec. 1863, Stats. (Supp. 1906: Laws of 1901, ch. 425), a city
   may, if it sees fit, refuse to grant to an interurban railway com-
   pany the right to run its cars over the city streets. Having
   such power, it may, on granting the right, exact any conditions
   it sees fit, provided they are not unlawful in themselves, such as;
   an agreement that the rate of fare to a neighboring city shall
   not exceed a certain sum.

4. Sec. 1862, Stats. (1898), and sec. 1863, Stats. (Supp. 1906: Laws,
   of 1901, ch. 425), are not analogous to sec. 1778, Stats. (1898),.
   under which it has been held that, since telephone and telegraph
   companies not only receive their franchises directly from the
   state but are expressly authorized by the state to use the public
   streets and highways, the authority of local municipalities is.
   restricted to legitimate police regulation.

5. Where, in the exercise of a power specifically conferred upon it,.
   a city passes an ordinance granting to a street or interurban
   railway company a franchise, and fixing rates, it acts as the
   agent of the state, and when, by acceptance, the ordinance be-
   comes a contract the public is concluded by it during its life,
   and its obligations cannot be impaired by subsequent legislation

unless it be held that such ordinance is a part of the charter of the company and subject to amendment or repeal under sec. 1, art. XI, Const.

6. Statutes granting to cities the right to make long-time contracts binding on the public and fixing rates to be charged by public-service corporations are not looked upon with favor and will be strictly construed.

7. Where no specific authority had been conferred upon a city to make such a contract, the contract will remain valid between the parties until the state sees fit to exercise its paramount power to fix the rates, and no longer.

8. The governmental power of the state to fix rates was not surrendered by the enactment of sec. 1862, Stats. (1898), or sec. 1863, Stats. (Supp. 1906: Laws of 1901, ch. 425).

9. The right conferred on a railway corporation to use the public streets, under either of said sections, becomes one of the corporate franchises of the corporation, the city acting as the delegated agent of the state in granting it; and, this being so, sec. 1, art. XI, Const., would seem to empower the legislature to modify the conditions on which such franchise was given, as well as to repeal or amend the franchise itself.

10. Ch. 362, Laws of 1905, which is applicable to interurban railways and provides among other things that all charges made by any carrier coming under its provisions "shall be reasonable and just, and every unjust and unreasonable charge . . . is prohibited and declared to be unlawful," did not of its own force work any change in existing rates, and hence did not supersede an ordinance contract by which an interurban railway company was given the right to use the public streets of a city upon condition that a certain rate be charged; though under said statute such rate might be superseded by a determination by the railroad commission.

11. A rate which is unreasonably low can be corrected in such a case as well as one which is unreasonably high; but until affirmative action is taken by the railroad commission the courts cannot relieve a carrier from an improvident contract.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This action was brought to perpetually enjoin and restrain the defendant from increasing its rates for carrying passengers on its interurban road between the cities of *Manitowoc* and Two Rivers.   On October 15, 1900, the city of *Manitowoc*

passed an ordinance granting to Thomas Higgins the right to operate a street railroad upon certain streets in the city of *Manitowoc* upon certain prescribed conditions. By the same ordinance permission was granted to said Higgins to run interurban cars upon certain streets in the city of *Manitowoc,* which cars were to be operated along an interurban line which Mr. Higgins proposed to build to Two Rivers. One of the conditions upon which the right was given to run interurban cars on the streets of the city was that the rate of fare to be charged between said cities should not exceed ten cents for a single trip, during the life of the franchise, which was thirty-five years, and the ordinance provided that it should have no force or effect until its terms and conditions were accepted by the grantee. Such grantee did accept the conditions of the ordinance and constructed the street and interurban railroad contemplated therein. Thereafter the defendant corporation was organized and succeeded to all the rights and property to which said franchise pertained, and on November 24, 1902, at the instance of the traction company and with the consent of Mr. Higgins, an ordinance was passed granting to the traction company the same rights and privileges that had been granted by the former ordinance to Mr. Higgins, subject, however, to the same conditions and liabilities that were contained in the original ordinance. The traction company accepted the terms and conditions of the ordinance of November 24, 1902, and until the year 1909 continued to charge an interurban fare of ten cents between the cities of *Manitowoc* and Two Rivers. On April 25th of that year it made a public announcement that on and after May 1, 1909, it would raise the charge to fifteen cents. This action was commenced to prevent such raise and to compel the defendant to abide by its contract. The defense in substance was that the city in the first instance had no power or authority to exact such a condition and that the portion of the ordinance relating to interurban fares was *ultra vires.* Further, that the ordinance in any event had been

superseded and repealed by subsequent legislative action, and that a fare of ten cents was not compensatory and one of fifteen cents was reasonable.

The trial court found that ten cents is not now a reasonably sufficient fare for travel upon said interurban railway in consequence of increased taxes and other expenses between said cities, and that fifteen cents is not an unreasonable fare. As a conclusion of law the court found that the defendant was bound by the stipulation contained in the ordinance and that it could not exact to exceed a ten-cent fare and that the temporary injunction issued in the action should be made permanent. As a condition of making it permanent, however, plaintiff was required to file a bond with sufficient surety to indemnify the defendant against loss if the judgment should be reversed on appeal. The plaintiff refused to file the bond, and on proof of such failure judgment was entered dismissing the complaint, from which judgment this appeal is taken.

*A. L. Hougen,* for the appellant, cited the following, among other cases, as sustaining the validity of the ordinance or contract in question: *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29; *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 39; *State ex rel. Vilter Mfg. Co. v. M., B. & L. G. R. Co.* 116 Wis. 142; *State ex rel. Cream City R. Co. v. Hilbert,* 72 Wis. 184, 192; *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493; *People ex rel. W. S. St. R. Co. v. Barnard,* 110 N. Y. 548; *Mayor, etc. v. D. D., E. B. & B. R. Co.* 133 N. Y. 104; *Detroit v. Ft. W. & B. I. R. Co.* 95 Mich. 456; *Detroit v. Detroit C. St. R. Co.* 184 U. S. 368; *Monroe v. D., M. & T. S. L. R. Co.* 143 Mich. 315, 106 N. W. 704; *Clinton v. Worcester Con. St. R. Co.* 199 Mass. 279; *West Bloomfield v. D. U. R. Co.* 146 Mich. 198, 109 N. W. 258. To the point that the defendant, having accepted the terms of the ordinance, was estopped to deny its validity or the reasonableness of its terms: *State ex rel. Smythe v. Milwaukee Ind. Tel. Co.* 133 Wis.

588; *State v. Milwaukee E. R. & L. Co.* 136 Wis. 179; *Ashland v. Wheeler,* 88 Wis. 607; *Muncie Nat. Gas Co. v. Muncie,* 160 Ind. 97, 66 N. E. 436; *Kansas City v. K. C. B. R. Co. (In re Topping Ave.)* 187 Mo. 146, 86 S. W. 190; *People ex rel. Jackson v. Suburban R. Co.* 178 Ill. 594, 53 N. E. 349; *Jersey City v. North Jersey St. R. Co.* 72 N. J. Law, 383, 61 Atl. 95; *Camden & A. R. Co. v. May's Landing & E. H. C. R. Co.* 48 N. J. Law, 530, 7 Atl. 523; *Potter v. Calumet E. St. R. Co.* 158 Fed. 521; *Amesbury v. Citizens' E. R. Co.* 199 Mass. 394, 85 N. E. 419.

For the respondent there was a brief by *Nash & Nash,* and oral argument by *E. G. Nash.* They contended, *inter alia,* that the city had no authority outside its territorial limits. *Schneider v. Menasha,* 118 Wis. 298; *Keefe v. Lexington & B. St. R. Co.* 185 Mass. 183; *South Pasadena v. Los Angeles T. R. Co.* 109 Cal. 315, 41 Pac. 1093; *Galveston & W. R. Co. v. Galveston,* 90 Tex. 398, 36 L. R. A. 33. The power to impose terms did not include power to fix rates. *Detroit v. Detroit C. St. R. Co.* 184 U. S. 368; *Interstate Com. Comm. v. C., N. O. & T. P. R. Co.* 167 U. S. 479; *Peik v. C. & N. W. R. Co.* 94 U. S. 164; *Freeport W. Co. v. Freeport,* 180 U. S. 587; *Home T. & T. Co. v. Los Angeles,* 211 U. S. 265; *Georgia R. & B. Co. v. Smith,* 128 U. S. 174; *Indianapolis v. Navin,* 151 Ind. 139, 41 L. R. A. 337; *Northern Pac. R. Co. v. State ex rel. Duluth,* 208 U. S. 583. In any event the legislature had the right, under the reserved power in the constitution, to change the rates. *Chapin v. Crusen,* 31 Wis. 209; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *State ex rel. Cream City R. Co. v. Hilbert,* 72 Wis. 184; *State ex rel. N. P. R. Co. v. Railroad Comm.* 140 Wis. 145; *Winchester & L. T. R. Co. v. Croxton,* 98 Ky. 739, 33 L. R. A. 177; *Buffalo E. S. St. R. Co. v. Buffalo St. R. Co.* 111 N. Y. 132, 2 L. R. A. 384; *Munn v. Illinois,* 94 U. S. 113; *Peik v. C. & N. W. R. Co.* 94 U. S. 164; *Stone v. Wisconsin,* 94 U. S. 181; *Indianapolis v. Navin,* 151 Ind. 139, 41 L. R. A. 337. And ch. 362,

Laws of 1905, which declares that only "reasonable rates" shall be valid and all others are prohibited, had the effect to repeal the ordinance in question so far as it fixes rates. On the question of estoppel they cited, among other cases, *Knoxville v. Knoxville W. Co.* 212 U. S. 1; *Becker v. La Crosse,* 99 Wis. 414; *Allen v. Clausen,* 114 Wis. 244; *Keefe v. Lexington & B. St. R. Co.* 185 Mass. 183.

BARNES, J.   The trial court found as a conclusion of law that the plaintiff was entitled to the permanent injunction prayed for.   As a condition of granting such relief it required the plaintiff to file within fifteen days an undertaking in the sum of $5,000 with sufficient surety, conditioned that, if on appeal to this court judgment should be awarded to the defendant, the plaintiff would pay such damages as the defendant sustained by reason of the injunction.   The plaintiff refused to file the undertaking, and on proof of such fact judgment was entered dismissing the complaint.

The court was in error in awarding any such conditional relief.   The case had been fully tried on its merits, and the findings of fact and conclusions of law on the litigated issues made and found by the court formed the basis for the final judgment that should be entered.   Either the plaintiff was entitled to relief or it was not.   If it was, the granting of that relief should not be made dependent on its ability to furnish a bond, or even on its willingness to assume the liability exacted, if it could furnish the bond.   Sec. 9 of art. I of our constitution provides:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

It seems quite clear that this provision of the constitution was overlooked and was violated in the instant case.

It is unnecessary to consider the ordinance of October 15, 1900, whereby certain rights and privileges were granted to Thomas Higgins, or the subsequent ordinance of November 24, 1902, whereby like privileges were granted to the *Manitowoc & Northern Traction Company,* except in so far as these ordinances relate to the rate of fare to be charged between *Manitowoc* and Two Rivers.    Both of these ordinances granted the right to run interurban cars over the streets of the city of *Manitowoc* on the condition that the rate charged for a single fare between the two cities should not exceed ten cents.    Each provided that it should not have any force or effect until its provisions were accepted by the grantee of the privilege, and Mr. Higgins accepted such condition in the first instance and the traction company accepted the condition of the second ordinance.    The language of the last acceptance is in part as follows:

"*The Manitowoc & Northern Traction Company* . . . does . . . accept all and each and every of the grants, privileges and franchises created, granted or conveyed to said traction company by said ordinance, and you, the said mayor, and board of aldermen, and the said city of *Manitowoc,* are hereby notified that it is the intent of said traction company . . . to accept said ordinance and all the grants, rights, privileges and franchises therein specified . . . and to become and be and remain bound by the contract effected by said ordinance and this acceptance thereof according to the true intent and purpose of said ordinance."

We shall waste no time in discussing the proposition that this ordinance and the acceptance of it constituted a contract in form.    The real questions involved in the case are three in number: (1) Did the parties have the power to make the contract?    (2) If so, to what extent is it binding and enforceable?    (3) Has it been lawfully superseded or nullified?

1. That the traction company had the right on its part to make a contract fixing the rate of charge for a given service, provided such contract violated no law and was not inimical

to public policy, is clear enough. By so doing it could not forestall the state and prevent it from exercising its governmental function regulating rates. But until the state sees fit to interpose, the carrier ordinarily may exercise a free hand in fixing rates, subject to the qualification that they must not be unreasonably high and must not be unjustly discriminatory. In order to have a binding contract there must be mutuality of obligation, and whatever doubt arises on the branch of the case we are considering arises in reference to the right of the city to make the particular contract before us.

There was no law inhibiting the making of the contract involved, at the time it was entered into, and there is nothing to show that it was discriminatory or against public policy. It was no doubt contemplated by the city that its residents would be liberal patrons of the road, and the consideration which it gave for the rate of fare fixed was the right to run the interurban cars in the streets of the city. The right of the city to make the contract which it did, in so far as it had any statutory right to do so, is found in sec. 1863, Stats. (1898), as amended by ch. 425, Laws of 1901. It was held in *Milwaukee L., H. & T. Co. v. M. N. R. Co.* 132 Wis. 313, 112 N. W. 663, that sec. 1862, Stats. (1898), applied only to street railway companies, and that sec. 1863 applied to both street and interurban railways. Prior to the passage of ch. 425, Laws of 1901, sec. 1863 contained no provision to the effect that interurban railways might pass through cities by obtaining the consent thereof. That law amended sec. 1863, Stats. (1898), so as to provide that

"Any street railway corporation may extend its railway to any point within any town adjoining a municipality from which it derived its franchise. . . . Corporations may be formed and governed in like manner as is provided in sec. 1862 for the purpose of building, maintaining and using railways . . . in any city, village or town or to extend from any point in one city, village or town to, into or through any other city, village or town, . . . and for that purpose, with

the consent of the common council of any city, the board of trustees of any village and the written consent of a majority of the supervisors of any town in, into or through which such railway . . . may extend, may lay and operate their railways . . . upon, across and along any highway. . . . In any city or village the consent of the common council or board of trustees shall be given by ordinance, and upon such terms and subject to such rules and regulations and the payment of such license fees as the common council or board may prescribe."

There is no material difference in the provisions of these two sections in so far as they pertain to the matter of giving consent to the use of the public streets. Sec. 1862, Stats. (1898), authorizes a city to grant the use of a street to a street railway company upon such terms as the proper authorities shall determine, while sec. 1863, Stats. (Supp. 1906: Laws of 1901, ch. 425), authorizes an interurban railway company to use the streets of the city provided its consent is obtained, and such consent may be given upon such terms as the common council may prescribe. The first ordinance was passed before ch. 425, Laws of 1901, became a law, and therefore before we had any statute expressly authorizing a city to consent that the cars of an interurban railway company might be run over its streets. The franchise was also granted to an individual instead of a corporation. *Allen v. Clausen,* 114 Wis. 244, 90 N. W. 181, was decided in this court in April, 1902, in which it was held that a city had no authority to grant such a franchise to an individual and that the grantee should be a corporation organized in the manner provided by statute. The ordinance of November, 1902, was no doubt applied for and obtained because it was assumed that the former ordinance was void for the reasons stated, the railway property having in the meantime been transferred to a corporation capable of taking it, as well as the necessary franchises to operate it. It is immaterial whether the original ordinance is valid or void. *Ashland v. Wheeler,* 88 Wis. 607, 60 N. W. 818. The legality of the second ordinance is not attacked in

its entirety, although some of its provisions are claimed to be *ultra vires.*

This court has repeatedly held that the use of city streets by interurban cars subjected them to an additional burden for which the property owner must be compensated. *Chicago & N. W. R. Co. v. M., R. & K. E. R. Co.* 95 Wis. 561, 70 N. W. 678; *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, 74 N. W. 538; *Beloit, D. L. & J. R. Co. v. Macloon,* 136 Wis. 218, 224, 116 N. W. 897; *Schuster v. Milwaukee E. R. & L. Co.* 142 Wis. 578, 583, 126 N. W. 26.

This court has also held that interurban railways could not exercise the right of condemnation given by sec. 1863*a,* Stats. (1898), unless the consent of the municipality in which the right was sought to be exercised had been obtained in the manner provided by secs. 1862 and 1863. *Milwaukee L., H. & T. Co. v. M. N. R. Co.* 132 Wis. 313, 112 N. W. 663; *Beloit, D. L. & J. R. Co. v. Macloon, supra; In re Plowright,* 140 Wis. 512, 122 N. W. 1043; *Milwaukee L., H. & T. Co. v. Burlington E. L. & P. Co.* 142 Wis. 436, 441, 125 N. W. 932; *Schuster v. Milwaukee E. R. & L. Co., supra.*

The logic of the decisions cited from our own court leads to the conclusion that a city, if it sees fit, may refuse to grant an interurban railway company the right to run cars over its streets. The decisions elsewhere made under like statutes are to the same effect. *Galveston & W. R. Co. v. Galveston,* 90 Tex. 398, 39 S. W. 96, 36 L. R. A. 33; *Pacific R. Co. v. Leavenworth,* 1 Dill. 393; *Atchison St. R. Co. v. Nave,* 38 Kan. 744, 17 Pac. 587; *Northern Cent. R. Co. v. Baltimore,* 21 Md. 93; *Indianapolis & C. R. Co. v. Lawrenceburg,* 34 Ind. 304; *Indianola v. G., W. T. & P. R. Co.* 56 Tex. 594; *Detroit v. Ft. W. & B. I. R. Co.* 95 Mich. 456, 54 N. W. 958; *Monroe v. D., M. & T. S. L. R. Co.* 143 Mich. 315, 106 N. W. 704; *People ex rel. West Side St. R. Co. v. Barnard,* 110 N. Y. 548, 18 N. E. 354. See, also, *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, 40 N. W. 487.

In the case before us the city did give its consent, and the real question is, Did it have the right to impose the terms which it undertook to impose as a condition to such consent?

Under a statute not unlike our sec. 1862, Stats. (1898), the city of Detroit, subsequent to the construction of a street railway, passed an ordinance regulating the rate of fare to be charged.    Speaking of the power of the city under such a statute the court said:

"The right of a municipality, under the statute, to refuse its consent to the operation of a street railway in its streets, is an absolute one, and its power, in the first instance, to impose conditions, is unlimited.    The nature of the condition imposed does not depend upon other grants of power.    Respecting the imposition of further conditions after consent given, it is only necessary that the municipality keep within the scope of the reservation."    *Detroit v. Ft. W. & B. I. R. Co., supra.*

In *People ex rel. West Side St. R. Co. v. Barnard, supra,* it is held that under a statute authorizing a city "to secure adequate compensation for the right to construct . . . street railroads in cities," it was within the power of the city to prescribe the rates which should be charged as a condition of giving such consent.

In *Clinton v. Worcester Con. St. R. Co.* 199 Mass. 279, 85 N. E. 507, it was held, under a statute authorizing the aldermen of cities through which street railway companies intended to pass to impose "such restrictions" upon such companies as "they deemed the interests of the public might require," that consent to the use of the streets might be given upon condition that children be transported to and from the public schools, and to and from the state normal school located at Worcester, at half fare.

In *Pacific R. Co. v. Leavenworth, supra,* a Kansas statute forbade a railway company to construct its road upon the streets of an incorporated city "without the assent of the corporate authorities."  ·Consent was granted on the condition that the railway company should build a depot in a certain

part of the city and "grade, riprap, and pave the street it used." The company agreed to accept the use of the street on such terms. It was held that the city had the lawful right to make the condition, and that the company, having consented to it, was bound by its contract.

In *Atchison St. R. Co. v. Nave, supra,* it was held, under the Kansas statute above referred to, that the city might give its consent to the occupancy of its streets by a railway company on condition that the railroad be built within six months.

In *Indianapolis & C. R. Co. v. Lawrenceburg,* 34 Ind. 304, consent to the use of the streets by a railroad company was given on condition that "where the grade of said road shall be higher than such street, alley or public ground, the said company shall fill up on each side of their said road to form a convenient passage over the same." The grade of the street was changed after the road was built, and it was held that the railroad company was liable for the cost of doing the work stipulated for in the ordinance granting consent.

In *Indianola v. G., W. T. & P. R. Co.* 56 Tex. 594, consent was granted to a railway company to use a public street on condition that the company extend its road a certain distance beyond the town and execute a bond in the sum of $50,000 as stipulated damages conditioned for the faithful performance of the agreement. The statute in force empowered the railway company to use a public street, but provided that the city might object to the use of the particular street selected, and on objection being made it was further provided that the governor might appoint some competent person to select a route. Objection was made to the use of the street selected, which objection was removed by the company assenting to the condition proposed and filing its bond as required. Thereafter it refused to extend the road as agreed. In an action brought upon the bond it was held that the contract was not *ultra vires* and that the city might recover the penalty prescribed in the bond because of the breach of the contract.

In *Omaha W. Co. v. Omaha,* 147 Fed. 1, 12 L. R. A. N. S.
736, the statute involved empowered the city of Omaha to
contract for the construction and maintenance of "waterworks
on such terms and under such regulations as may be agreed
on." It was held that the statute authorized the city to enter
into a contract for the construction of waterworks and to pro-
vide for the rates at which the contractor should furnish water
to private consumers.

In *Walla Walla v. Walla Walla W. Co.* 172 U. S. 1, 19
Sup. Ct. 77, the statute involved empowered the city of Walla
Walla to erect or to authorize the erection of waterworks and
to permit the use of the streets for the purpose of laying pipes
for a term not exceeding twenty-five years, and it was held
that this provision authorized the city to enter into a contract
granting a water company the right to lay its pipes for twenty-
five years, and to agree on its part that so long as the contract
remained in force the city would not itself construct water-
works.

In *Vicksburg v. Vicksburg W. W. Co.* 202 U. S. 453, 26
Sup. Ct. 660, the statute involved authorized the city of Vicks-
burg to contract for the erection and operation of a system of
waterworks, and it was held thereunder that the city might
lawfully, as a term of the contract for the construction of such
waterworks, give the grantee the exclusive right to erect and
maintain waterworks for a definite period of time, during
which it could not erect its own system in opposition to that
of the company receiving the franchise.

The cases relied upon by the respondent as establishing a
contrary doctrine are *Galveston & W. R. Co. v. Galveston,* 90
Tex. 398, 39 S. W. 96, 36 L. R. A. 33, and *South Pasadena
v. Los Angeles T. R. Co.* 109 Cal. 315, 41 Pac. 1093. The
Texas case is not in point. It was there held that the city
could not oust the railway company for failure to comply with
its contract, because the destruction of the railroad might op-
erate to the disadvantage of the public. The court did not

hold that an appropriate action might not be brought either to recover damages for the breach of the contract or to compel the railway company to comply with it, and there is no intimation in the decision that it was intended to overrule *Indianola v. G., W. T. & P. R. Co.* 56 Tex. 594, which covers the precise situation presented in the case before us.

The California case is in point to the proposition to which it is cited. The decision goes upon the ground that it would be against good public policy to permit a city to dictate the rates of fare that should be charged outside of its boundaries, because the general public is interested in such rates and should not be concluded by the action of a single city. We think this decision overlooks the important fact that the general public was not concluded by the agreement. That question will be subsequently discussed.

Inasmuch as the city might on any terms refuse its consent to the use of its streets by interurban cars, we see no reason why it might not exact any conditions it saw fit, provided they were not unlawful in themselves, and as to the parties to the contract there was nothing unlawful about the condition we are considering. The decided cases fully sustain this view. We therefore hold that the parties were competent to make the contract entered into.

The statutes under consideration are not analogous to sec. 1778, Stats. (1898), which was construed to extend to telephone companies, in *State ex rel. Wis. Tel. Co. v. Sheboygan,* 111 Wis. 23, 86 N. W. 657; *State ex rel. Smythe v. Milwaukee Ind. Tel. Co.* 133 Wis. 588, 114 N. W. 108, 315; and *Wis. Tel. Co. v. Milwaukee,* 126 Wis. 1, 104 N. W. 1009. When these decisions were made, telegraph and telephone companies not only received their franchises directly from the state, but they were expressly authorized by the state to use the public streets and highways under prescribed conditions without any permission or consent from the municipalities in which their lines were built. Cities, in the exercise of the

general police powers conferred on them, might prescribe reasonable regulations governing the use of streets by such companies, and in the cases referred to it was merely held that a city under the guise of such power could not wholly exclude such companies from using its streets, but was restricted under the law to the exercise of legitimate police regulations.

2. We next come to a consideration of the question of the extent to which the contract before us is binding and enforceable. That the legislature of the state might expressly empower cities to make such contracts as the one in question is well settled. In passing such an ordinance as we have before us, a city, proceeding under a grant of power specifically conferred, acts as the agent of the state, and the public is concluded by the contract during its life, and its obligations could not be impaired by subsequent legislative action, unless it were held that the ordinance was part of the charter of the railway company and subject to amendment or repeal under sec. 1, art. XI, of our constitution. Otherwise, a state may, in matters of proprietary rights, exclude itself and authorize its municipal corporations to exclude themselves from the right of regulating rates. *Vicksburg v. Vicksburg W. W. Co.* 202 U. S. 453, 26 Sup. Ct. 660; *Cleveland v. Cleveland City R. Co.* 194 U. S. 517, 24 Sup. Ct. 756; *Detroit v. Detroit C. St. R. Co.* 184 U. S. 368, 382, 22 Sup. Ct. 410; *New Orleans W. W. Co. v. Rivers,* 115 U. S. 674, 6 Sup. Ct. 273; *St. Tammany W. W. v. New Orleans W. W.* 120 U. S. 64, 7 Sup. Ct. 405; *Walla Walla v. Walla Walla W. Co.* 172 U. S. 1, 9, 19 Sup. Ct. 77; *Los Angeles v. Los Angeles City W. Co.* 177 U. S. 558, 20 Sup. Ct. 736; *Home T. & T. Co. v. Los Angeles,* 211 U. S. 265, 29 Sup. Ct. 50; *Knoxville v. Knoxville W. Co.* 212 U. S. 1, 29 Sup. Ct. 148; *Nelson v. Murfreesboro,* 179 Fed. 905, and cases cited on page 908.

Statutes granting to cities the right to make long-time contracts binding on the public and fixing a rate to be charged by a public-service corporation are not looked upon with favor

.and will be strictly construed. It is only where the right is very clearly conferred that the state will be held to have relinquished its power to enact laws regulating tolls. *Freeport W. Co. v. Freeport,* 180 U. S. 587, 588, 21 Sup. Ct. 493; *Detroit v. Detroit C. St. R. Co.* 184 U. S. 368, 388, 22 Sup. ·Ct. 410; *Chicago, M. & St. P. R. Co. v. Minnesota,* 134 U. S. 418, 456, 10 Sup. Ct. 462, 702; *Stanislaus Co. v. San Joaquin & K. R. C. & I. Co.* 192 U. S. 201, 210, 24 Sup. Ct. 241; ·*Georgia R. & B. Co. v. Smith,* 128 U. S. 174, 9 Sup. Ct. 47; *Ruggles v. Illinois,* 108 U. S. 526, 2 Sup. Ct. 832; *Home T. .& T. Co. v. Los Angeles, supra.*

No specific authority having been conferred on the city to ·enter into the contract in question, the right of the state to interfere whenever the public weal demanded was not abrogated. The contract remained valid between the parties to it until such time as the state saw fit to exercise its paramount :authority, and no longer. To this extent, and to this extent ·only, is the contract before us a valid subsisting obligation. It would be unreasonable to hold that by enacting sec. 1862, :Stats. (1898), or sec. 1863, Stats. (Supp. 1906: Laws of 1901, ch. 425), the state intended to surrender its governmental power of fixing rates. That power was only suspended until such time as the state saw fit to act. *Ashland v. Wheeler,* 88 Wis. 607, 60 N. W. 818; *Home T. & T. Co. v. Los Angeles, supra; Freeport W. Co. v. Freeport, supra; ·Stanislaus Co. v. San Joaquin & K. R. C. & I. Co., supra.* Furthermore, the right conferred on a railway company to use the public streets, under sec. 1862 or sec. 1863, becomes one of the corporate franchises of the corporation to which it is granted, the city acting as the delegated agent of the state in ·granting it. *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, 40 N. W. 487; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29, 36, 69 N. W. 791; *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550, 565, 63 N. W. 746; *State ex rel. Rose v. Superior Court,* 105 Wis. 651, 673, 81

N. W. 1046; *State ex rel. Att'y Gen. v. Portage City W. Co.*
107 Wis. 441, 445, 83 N. W. 697; *Allen v. Clausen,* 114 Wis.
244, 90 N. W. 181.   This being so, the reserved power of
amendment or repeal, contained in sec. 1, art. XI, Const.,
would seem to empower the legislature to modify the condi-
tions on which such franchise was given, as well as to repeal
or amend the franchise itself.   *Chapin v. Crusen,* 31 Wis.
209; *West Wis. R. Co. v. Trempealeau Co.* 35 Wis. 257;
*Att'y Gen. v. Railroad Cos.* 35 Wis. 425.

3. Whether the state has exercised its right to modify this
rate remains to be considered.   Ch. 362, Laws of 1905, ap-
plies to interurban railway companies.   *In re Application of
Ch. 362, Laws of 1905, to Certain Street Railways,* 1 Wis.
R. R. Comm. Rep. 178.   By that statute (sec. 3) it is pro-
vided that all charges made by any carrier coming under its
provisions "shall be reasonable and just, and every unjust and
unreasonable charge for such service is prohibited and de-
clared to be unlawful."   Railway companies are required to
file their tariffs with the railroad commission and are pro-
hibited from making changes therein except on ten days' no-
tice, and the rates fixed in such tariffs are declared to be the
lawful rates until changed as provided by the act.  Sec. 12 of
the law provides that the commission may, on complaint or on
its own motion, proceed to determine the reasonableness of
any rate, and, whenever such rate is found to be unreasonable,
may fix and determine what a reasonable charge shall be, and
thereupon the rate so fixed shall be the lawful rate.   By
subd. "c" of sec. 12 a railway company is given the same right
to make complaint that is given to any other person or cor-
poration.

It is contended that this law has superseded the contract
involved in this suit and that therefore the contract no longer
has any binding force or effect.   We do not think so.   The
statute worked no change in existing rates.   It simply pro-
vided that all rates should be reasonable, and left to the rail-

road commission the power to determine the fact as to whether or not a given rate was reasonable. When that determination was reached the law became operative upon the particular rate called in question and the rate arrived at then became the lawful rate and continued so until set aside in the manner provided by the law. The railroad commission has made no determination in the case before us; at least, if it has, it is no part of the record. Until that determination is made the contract is in force. When it is made the contract is superseded, if the rate is changed. The commission has ample authority to proceed upon its own motion. The traction company, under subd. "c" of sec. 12, has power to make the necessary complaint to compel an investigation. This works no hardship on any one. It may be, as the trial court found, that a ten-cent fare is unreasonable and that a fifteen-cent fare is not so. Usually, long-time contracts made under like conditions operate against the public interest, and, if the fare provided for is unreasonably low, the legislature has the same power over it that it would have if it were unreasonably high. It may also be that adequate service cannot be given at the rate fixed or that conditions have so changed that the road cannot be operated unless rates are increased and that the public will be better served by raising the rate than by permitting it to remain where it is. This is a question which calls for the exercise of legislative policy and discretion. The court cannot relieve the defendant from an improvident contract, but the contract is of such a character in the present instance that the legislative branch of the government may, in the interest of the public, abrogate it. If, as is contended by counsel for the respondent, no contract was entered into and we were dealing with the ordinance as a legislative enactment pure and simple and not as part and parcel of a contract, there might be good reason for the claim that it is superseded by ch. 362, Laws of 1905, without any affirmative action on the part of the railroad commission. But such is not the case before us.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment enjoining the defendant from changing the rates of fare between the cities of *Manitowoc* and Two Rivers provided for in the ordinance of November 24, 1902, until such time as such rates are changed by the legislature or through a legislative agency in the manner provided by law.